## Burns *et al. v.* Lewis.

1. Where in a suit for divorce the verdict of the second jury finds in favor of a total divorce and expressly disallows anything for alimony to the wife, the husband's property embraced in the schedule filed with the divorce proceedings remains his property just as though the jury had disposed of it by awarding it to him. And this is true whether any judgment or decree has been entered up on the verdict or not.
2. By the constitution of 1868, in suits for divorce the function of regulating the rights and disabilities of the parties devolved on the jury rendering the final verdict, subject only to a power of revision by the court. A final verdict in favor of a total divorce was sufficient to dissolve the marriage, though it was silent as to rights and disabilities, and though no judgment declaring the marriage dissolved was actually entered up, the verdict, so far as appears, not having been set aside or interfered with by the court.
3. On the dissolution of a marriage by total divorce, the wife ceases to be a member of the husband's family as effectually as if she were dead. She is therefore no longer a beneficiary of a homestead set apart in his property. Her right to use or enjoy the property as a homestead terminates with the expiration of the coverture.
4. Where a creditor seeks to charge homestead property as such, the proceedings must conform substantially to remedies enforceable against trust estates. A trust estate is not subject to attachment on the ground that the trustee is a non-resident of the State; nor is an alleged homestead subject to attachment as such on the ground that the owner is a non-resident. In this case there was no debt other than one contracted by a former beneficiary after the homestead had determined. The judgment founded on an attachment for such a debt was void on the face of the proceedings, and a sale under it passed no title.
5. One in possession of real estate under color of title and claim of right, is subject to be assessed for the taxes accruing thereon pending such possession, and if such person allows the premises to be assessed and sold for taxes as the property of a former occupant who has neither title nor possession, such sale being made under a general *fi. fa. in personam,* not specifying any particular property

to be seized, he cannot strengthen his title by purchasing at such sale, or from the purchaser at that sale. Any purchase so made by one subject to assessment will be treated as merely paying the taxes or redeeming the property.

(a) Sundry observations on the proper mode of issuing tax *fi. fas.*, where the owner of realty assessed is unknown or doubtful.

February 7, 1891. By two Justices.

Marriage and divorce. Practice. Verdict. Husband and wife. Homestead. Debtor and creditor. Trusts. Attachments. Judgments. Taxation. Title. Before Judge MARSHALL J. CLARKE. Fulton superior court. March term, 1890

On September 15, 1874, Thomas Lewis brought complaint for land against Catherine Lewis; and on August 24, 1887, he filed his bill against Bridget Burns, Catherine Lewis *et al.*, praying for possession of the land in controversy to be restored to him, for cancellation of sheriff's and tax deeds to Bridget Burns, etc. The defendants answered; and by consent the two cases were consolidated and tried together. The jury found for the plaintiff the premises in dispute, and that the sheriff's and tax deeds be cancelled. The defendants moved for a new trial, which was denied, and they excepted. The decision states the facts necessary for an understanding of the rulings made.

F. A. ARNOLD and G. T. FRY, for plaintiffs in error. HILLYER & BROTHER and BROYLES & SON, *contra.*

BLECKLEY, Chief Justice.

A great many grounds are embraced in the motion for a new trial. Severally and collectively they raise the general question whether the court erred in overruling the motion. There are controlling elements of the case which will enable us to decide this general question without discussing separately the grounds of the motion in detail. The conclusion at which we have arrived is, that though errors were committed on

the trial, none of them were of such a character as to warrant the court below, or this court, in setting aside the verdict.

1. For the sake of clearness, we shall first consider the right of Lewis to recover in his complaint for land in the nature of ejectment against Mrs. Lewis, irrespective of the claim by Mrs. Burns. The premises in controversy consisted of a parcel of land fronting $103\frac{1}{2}$ feet on Emma street and running back (same width) $185\frac{1}{2}$ feet to D'Alvingy street, the same being lot No. 25 in the subdivision of the Loyd property, in the city of Atlanta, and containing a half-acre, more or less. The action was brought in September, 1874. Did Lewis, the plaintiff, have title and the right of possession at that time as against Mrs. Lewis, the defendant in the action? The lot was conveyed to Lewis in 1868 whilst these parties were husband and wife. On the 10th of April, 1869, she applied for it to be set aside as a homestead, reciting that the family of Lewis consisted of himself, herself and one child. The application also recited the deed by which Lewis acquired title, and stated that she applied for exemption of the property as a homestead because he failed and refused to do so. After regular proceedings by survey, plat, etc., the homestead was approved by the ordinary on the 26th of April, 1869. This was done pending a suit for divorce which had been brought by Mrs. Lewis against Lewis upon the same day on which her application for homestead was filed. The first verdict in the divorce suit was rendered at the April term, 1871. The date of the second verdict does not appear in the transcript of the record, but from divers facts it is manifest that the second verdict was rendered prior to the commencement of the action of complaint by Lewis against Mrs. Lewis for the recovery of the premises. Neither of the verdicts makes mention of any child or children,

v 86-38

and as there is no such reference elsewhere in the record other than in the application for homestead, the presumption is that the child, if any, had died before the parents were divorced. Should the fact be otherwise, the rights of the child under the homestead proceedings will not be affected by the result of this litigation. Its life or death may therefore be treated, and was treated below, as immaterial to a right disposition of the present controversy. This city lot was, by schedule, embraced in the pleadings in the divorce suit, and thus was before the court for disposition by the second jury. Code of 1868, §§1719, 1721, corresponding to Code of 1882, §§1720, 1722. The verdict of that jury granted a total divorce to both parties, and expressly declared that no alimony was to be set apart for the support of the wife. Otherwise, the verdict was silent as to property, but the fair implication is that the intent of the jury was that this lot, which was the only property specified in the schedule, was to be and remain the property of the husband. The verdict is to be understood as denying the wife any enjoyment of it after the marriage was dissolved, and as leaving the ownership in the husband. *Barclay* v. *Waring*, 58 *Ga.* 86. So far as appears, no judgment or decree of the court was rendered in the divorce suit, either declaring the marriage dissolved or making any disposition of the scheduled property. Doubtless the law contemplates that some judgment should be rendered. Indeed, the code is express, where the verdict disposes of property, that the court shall enter such judgment or decree, or take such other steps usual in chancery, as will effectually execute the verdict. Code of 1868, §1723; Code of 1882, §1724. But where the verdict denies alimony, and in effect leaves the property unchanged in ownership, no judgment or decree is essential to carry the verdict into effect, so far as property

rights are concerned. In the case above cited none such was rendered, and this court ruled that the divorce worked no change in the title.

2. After the rendition of two verdicts in favor or the divorce, was it indispensable that a judgment declaring the divorce granted should have been entered up in order for the marriage to be legally dissolved and Mrs. Lewis eliminated from the family of . her husband? This might have been necessary had the proceeding been governed by the constitution of 1865, as was that in *Clark* v. *Cassidy*, 62 *Ga.* 408, 64 *Ga.* 662. Under that constitution it devolved upon the court to regulate the rights and disabilities of the parties. Irwin's Code, §4964. But by the constitution of 1868 this function was lodged with the jury rendering the final verdict, subject only to a power of revision by the court. Code of 1873, §5116. It was under this latter constitution that the divorce suit of Mrs. Lewis against her husband was begun and terminated. The final verdict being in favor of a total divorce, admits of no construction but that the jury intended the marriage should be dissolved, and we think the revising power of the court contemplated by the constitution of 1868 would not extend to this element of the verdict, but only to any special findings, had the verdict embraced any, touching the rights and disabilities of the parties. The verdict being silent as to the rights and disabilities of the parties, there was nothing over which the revising power of the court could be exercised. The only judgment which could have been rendered was one declaring a total divorce. This being so, we think the omission to enter up such a judgment was not matter of substance, and that the legal effect of the final verdict was to dissolve the marriage *ipso facto*. It may be added that Mrs. Lewis does not controvert the completeness or finality of the divorce. In her answer to

the bill filed by Lewis in connection with his original suit against her for the land she, by implication, admits that a decree was rendered in the divorce case, for she mentions a decree by name. As we find none, however, in the record, we dispose of the question independently of her answer.

3. The dissolution of the marriage severed Mrs. Lewis from the family and she was no longer a beneficiary of the homestead. By the constitution of 1868 her husband, as the head of a family, had the right to a homestead, of which the sole beneficiaries were the members of his family. Code of 1873, §5135. By statute she as his wife was empowered to have the homestead set apart if he failed or refused to do so. This right she exercised, but the fact that the property was set apart on her application would give her no better or more durable interest in the use of it than she would have had if it had been set apart on his application. The death of a wife where there are no surviving minor children, or the majority of children where there is no surviving wife or widow, terminates the homestead. *Heard* v. *Downer*, 47 *Ga.* 629 ; *Benedict* v. *Webb*, 57 *Ga.* 348. A total divorce severs the wife from the family as effectually as death itself. She ceases to be a beneficiary of the homestead provision, and her relation to it from thenceforth is the same as if she had never been a member of the family. The provision which the law contemplates for a divorced wife is alimony or such an interest in the property of the husband as the jury rendering the final verdict shall award to her. In this instance the jury thought proper to declare in express terms that no alimony was to be set apart for her support. We have already seen that the effect of this was to leave the title to the property now in question in Lewis. If her interest in it as a homestead was destroyed by the dissolution of the marriage, and the verdict conferred upon

her no new interest, she was left altogether without right to use or occupy the premises, and consequently, when Lewis brought his action against her in 1874, both the title and the right of possession were in him. As between him and her, therefore, his recovery in the court below was correct.

4. The next inquiry is as to the title set up by Mrs. Burns and the right of a recovery by Lewis as against her. Her title has two branches. First, she claims as purchaser at a sheriff's sale which she procured to be made under an attachment issued at her instance against Lewis in 1882. The attachment was issued in May, judgment upon it was rendered in the justice's court in July, and the property was sold by the sheriff in September, 1882. The ground alleged in the affidavit for attachment was that Lewis resided out of the State, and the petition filed in the justice's court by Mrs. Burns in support of her attachment alleged that Lewis was indebted to her in the sum of $100.00, besides interest, on an account for money furnished, materials provided and labor done on his house and lot in the city of Atlanta (describing these premises); that the same had been exempted and set apart as a homestead, and that the money and materials furnished and labor done were all furnished and done for repairs on said homestead, at the instance of the beneficiaries of the homestead, and were all necessary for the protection and preservation of the property. The account bore date in January, 1879, and consisted of various items aggregating $100.00, the items being lumber for improving and repairing house, railings for fences, digging post-holes, posts, well-bucket, pulley for well-bucket, windlass for well, well-house and brick wall in well, brick and labor for walks, one grate and setting same, nails, and two doors. This proceeding by attachment is susceptible of only one construction, which is that it

was an attempt to charge Lewis by attachment with expenses incurred by Mrs. Lewis in making repairs to the house and premises as homestead property long after the homestead terminated. The pleading shows on its face that, treated as a claim against Lewis, it was void, because the facts stated in the petition and bill of particulars would raise no debt against him personally. Treating the claim as one against the homestead property, the attachment was void, for homestead property is to be made liable for debts chargeable upon it in the same manner as ordinary trust estates are made liable. *Willingham* v. *Maynard*, 59 *Ga.* 330 ; *Wilder* v. *Frederick*, 67 *Ga.* 669. And a trust estate is not subject to attachment on account of the non-residence of the trustee. *Smith* v. *Riley*, 32 *Ga.* 556. The judgment founded upon this attachment was consequently void on its face, the proceedings from which it resulted showing that there was no cause of action otherwise than as a claim against the property in its homestead character, and such a claim being under the law a subject-matter for which the remedy of attachment is not available. The justice's court had no jurisdiction by attachment of the alleged cause of action and the judgment was one which it had no legal power to render. The sale made by the sheriff was therefore void, and Mrs. Burns acquired no title as against Lewis by her purchase at that sale.

5. The other branch of Mrs. Burns' title springs out of a sale for taxes. Speaking of the sheriff's sale made in September, 1882, she states in her answer that : " The sale was in every sense legal, open and fair. Under it defendant went into possession and has remained in it ever since." In September, 1883, an execution was issued in favor of the City of Atlanta against Catherine Lewis for $6.00, " the amount of her city tax for the year 1883." This execution mentioned no specific

property, but directed generally the seizure of the goods and chattels, lands and tenements of Catherine Lewis. It was levied upon the premises now in controversy as her property. A sale took place in pursuance of this levy in November, 1883, at which the city was the purchaser, and a deed was made to the city accordingly, the purchase price recited being $15.13, which was the amount of the tax *fi. fa.* together with the costs thereon and the expenses of sale. After retaining the title thus acquired for more than one year, the city, in January, 1885, offered the property for sale at public outcry and Mrs. Burns became the purchaser at the price of $24.10. A deed to her was executed by the mayor of the city. This is her tax title. It appeared in evidence that, according to the returns of the city assessors, the premises were assessed for the tax of 1883 as the property of Mrs. Catherine Lewis, and had been so assessed each year consecutively for ten preceding years. It further appeared that the tax assessed on these premises for the year 1883 was $6.00, and that Mrs. Lewis was not assessed upon any other property, so that if she was answerable to the city for any tax whatever, it was only on this particular property. It did not appear, however, that she was in possession of these premises at any time after the sheriff's sale in September, 1882. On the contrary, it appeared from the answer of Mrs. Burns that she, Mrs. Burns, was in possession when the taxes of 1883 accrued. Her answer further states that: "This defendant paid the State, county and city taxes for 1882 on the property. These taxes were then assessed against the property in the name of Catherine Lewis. In 1883, this defendant resided out of the city of Atlanta and had omitted to have the property transferred on the city tax books from the name of Mrs. Lewis to her own name." Mrs. Lewis being neither the owner nor in possession of the premises in 1883, was

not chargeable with the taxes of that year, nor does it appear that she returned the property for taxation, either as agent or otherwise, so as to render herself chargeable by reason of returning it. Indeed, the taxing system as to real estate, under the charter of Atlanta, does not contemplate private returns, but only assessment by the official assessors and the returns made by them, as the basis of taxation. Acts of 1874, pp. 124, 144. The official assessors are at liberty to return property as belonging to unknown owners, but not to ascribe ownership to any and every person indifferently. Doubtless they can treat as owner any person in possession when they are unable to fix ownership on any one else, for possession is a mark of ownership; but where there is no actual possession at the time the premises are examined and assessed, they should not return any owner as known if in fact he is unknown. If they do so, and if an execution issues for the taxes against a person who has neither possession nor any interest in the property, what authority is there for selling or seizing one parcel of property more than another unless the execution points it out? Can an execution *in personam* sell anything as to which the defendant neither has title nor any right to represent the person who has it? We should say not. In *Stokes* v. *The State*, 46 *Ga.* 412, the execution described the property as the "Bryan plantation," and the court said: "If it is true that the property is bound for the taxes, it makes very little difference who the owner of that property is, or how a tax execution describes it, so it is done with sufficient definiteness to enable the levying officer to ascertain the property." In *Williams* v. *Young*, 51 *Ga.* 453, the defendant in the tax *fi. fa.* was in possession, and the property had been returned by him in the character in which the *fi. fa.* charged him, namely, as agent of the

estate of a deceased owner. In *Hight* v. *Fleming*, 74 *Ga.* 592, it appeared that the defendant in the tax *fi. fa.* was the agent of the owner of the property taxed, and that the tax for which the *fi. fa.* issued was assessed upon the property from the sale of which the fund in court for distribution arose. The facts stated in the report would warrant the inference that the agent was in possession of the property when the tax accrued. In *The State* v. *Hancock,* 79 *Ga.* 799, the defendant in the tax *fi. fa.* was in possession with his family, to whom the property belonged, and he had returned it in his own name as owner. In *National Bank of Athens* v. *Danforth,* 80 *Ga.* 55, the defendant in the tax *fi. fa.* was in possession of the property, probably at first as agent for her son, the owner. The circumstances indicated that it had been returned by her or her agent for taxation for some years before she became interested in it in her own right. There were executions for three years' taxes, and the only doubtful matter was as to the taxes of the first year. The evidence warranted the conclusion that she had returned it, though informally, for taxation in each of the three years, and had a right so to do. None of these cases afford any warrant for selling property for taxes under a general *fi. fa.* against a person who is not the owner or occupant nor the agent of either, and who has not returned it for taxation. On the other hand, the case of *Clewis* v. *Hartman,* 71 *Ga.* 810, has a strong tendency to show that such a sale will pass no title. In that case the tax *fi. fa.* was issued against one person as agent for another. As such agent, the defendant had returned by number two lots of land for taxation. The *fi. fa.*, which was a general *fi. fa. in personam,* was levied upon a third lot not embraced in the return. It did not appear that either the agent or his principal was in possession of the lot levied upon during the year for which the tax

was assessed, nor did either of them return the lot for taxation. In that case, as in this, the *fi. fa.* did not show on its face that it was issued for taxes due on the land which was sold. A sale was made under the levy, and a deed was executed accordingly. It was held that the purchaser acquired no title. For general authorities on this question, most of which are affected by statutory provisions, see Cooley on Tax. 396; 1 Blackw. Tax Titles, §256 to §277. In this State, the universal rule, unless some statute can be shown to vary it in particular instances, is that taxes are to be charged upon the owners of property. Owners, therefore, have an interest in being properly designated in executions which issue for the collection of taxes upon their property, or if they cannot be designated with reasonable certainty, that the property shall be pointed out in the executions as authority for seizing it irrespective of ownership, or as the property of some particular person. In all cases of doubt, the execution should specify the particular realty on which the tax accrued, and direct the officer to seize it or so much of it as is necessary to pay its own taxes. This is especially true where the system of assessment, as in Atlanta, is by official assessors, and not by returns made to a tax-receiver. Under such a system, the executions issued for taxes on realty should be of a mixed nature, that is, each execution should be a process partly *in rem* and partly *in personam*. Of course, where the owner is wholly unknown, and is unrepresented by an occupant or agent, the execution would, from the necessity of the case, have to issue against the property only. The divorce suit was matter of public record in the superior court of Fulton county. So, too, was the result of the homestead proceedings. The two, read together, furnished notice that Mrs. Lewis ceased to have any interest in these premises when the divorce was granted. After

that time the city assessors had no warrant for treating
Mrs. Lewis as owner save that she was in possession.
So long as she remained in possession, they were justi-
fied, perhaps, in so treating her; but Mrs. Burns, not
Mrs. Lewis, was in possession in 1883, under her pur-
chase at the sheriff's sale made in September, 1882.
What reason, then, was there for assessing the premises
for the tax of 1883 as the property of Mrs. Lewis?
And what propriety was there in levying upon the
property and selling it as hers under a general *fi. fa.*
against her? At a sale so made the city, a party to
the wrong assessment, became the purchaser. Did it
acquire any title whatever? We are strongly inclined
to the opinion that it did not. But if it did, was not
the subsequent purchase by Mrs. Burns from the city,
although made after the year for redemption had ex-
pired, a redemption in substance and effect? She was
in possession under claim and color of title when the
tax of 1883 accrued. She was the sister of Mrs. Lewis,
knew that Mrs. Lewis was neither the owner nor in
possession, knew that the divorce had been granted, and
she was chargeable with notice that the action in favor
of Lewis for the recovery of possession was pending.
She could not have been ignorant that the duty of pay-
ing the tax rested either upon herself or upon Lewis,
and that the assessment to Mrs. Lewis was erroneous.
As between her and Lewis, was it not her moral duty
to pay the taxes for the year 1883? She obtained her
color of title pending his action for possession, and by
an unwarranted use of legal process in his absence from
the State. She thus entered into possession and has
been in possession ever since. On her theory of owner-
ship, the taxes for 1883 were chargeable to her. If
they were chargeable to her morally, she could not
better her title by a direct purchase at the tax sale.
Douglas *v.* Dangerfield, 10 Ohio, 152; Lacey *v.* Davis,

4 Mich. 140; Blackwood *v.* Van Vleit, 30 Mich. 118; McMinn *v.* Whelan, 27 Cal. 300; Barrett *v.* Amerein, 36 Cal. 322; Christy *v.* Fisher, 58 Cal. 256; Bassett *v.* Welch, 22 Wis. 175; Lybrand *v.* Haney, 31 Wis. 230; Gaskins *v.* Blake, 27 Miss. 675; Jacks *v.* Dyer, 31 Ark. 335; Black on Tax Titles, §146; 1 Blackwell on Tax Titles, §581; Cooley on Taxation, p. 500 *et seq.;* 2 Desty on Taxation, p. 934 *et seq.* See note to Blake *v.* Howe, 15 Am. Dec. 685 *et seq.* Nor could she strengthen her title by taking at second hand from the purchaser at that sale, the amount paid by her being inconsiderable as compared with the value of the property. Her purchase would count only as a redemption. Dubois *v.* Campau, 24 Mich. 360; Coppinger *v.* Rice, 33 Cal. 408; Whitney *v.* Gunderson, 31 Wis. 379; Keith *v.* Keith, 26 Kans. 26; Cowdry *v.* Cuthbert, 71 Iowa, 733; Wambole *v.* Foot, 2 Dak. 1, s. c. 2 N. W. Rep. 239. But let it be granted that Mrs. Burns might have acquired title had the property been assessed to Lewis, the owner, and sold as his, yet it would not follow that she could acquire a better title than the person had to whom it was assessed and as whose property it was sold. Her relation to the property and to Lewis, as owner, might not cut her off from purchasing his title had it in fact been sold, but Lewis was not the defendant in execution, nor was the execution against his property, but against the goods and chattels, lands and tenements of Mrs. Lewis. Under the special facts of the case, Mrs. Burns could not acquire the title of Lewis, because it was not sold; and as Mrs. Lewis had no title, Mrs. Burns took nothing by her purchase from the city. She and the city were alike affected by the want of title or possession in Mrs. Lewis when the taxes of 1883 accrued.

For the reasons which we have assigned, the case had a right result as to Mrs. Burns. and we have already

seen that there was a right of recovery against Mrs. Lewis. This being so, none of the assignments of error in the bill of exceptions can be sustained as cause for a new trial. The court was correct in denying the motion.

*Judgment affirmed.*