## RORIE *v.* RORIE.

1. Where a suit was brought for a total divorce, and on the first trial the presiding judge directed a verdict for the plaintiff, the defendant could bring such ruling to this court for a review by direct bill of exceptions.
2. If the judge of the superior court can in any case direct the jury to

find a verdict for a total divorce, it is erroneous to do so where the ground on which the suit is predicated is desertion of the husband by his wife, and the defendant pleads and introduces testimony tend'ing to show that a separation was rendered necessary by reason of cruel conduct on the part of the husband.

Submitted February 5,—Decided June 18, 1909.

Divorce.    Before Judge Wright.    Haralson superior court. January 29, 1908.

J. E. Rorie brought suit against his wife, seeking a total divorce on the ground of desertion. She pleaded to the jurisdiction, and also filed an answer in which she admitted that they were living separate and apart, but alleged that the plaintiff had been guilty of repeated acts of cruelty which affected her health and rendered it impossible for her to live with him. She admitted that he had asked her to return to his house, but alleged that this was not done in good faith, but only for the purpose of covering up his cruelty. On the trial the plaintiff testified that his wife had continued to live in the house with him until 1898, when she left, and thereafter remained in a state of desertion from him; that the birth of her first child caused injury to her, and for the last two or three years during which she remained in his house she was in bed almost constantly, "pretending to be sick;" and that from 1894 to the time when she left his house she declined to cohabit with him as his wife, though she was able "to walk straight and go where she pleased." He said: "I do not think that she was too sick to have been as a wife to me." He further stated, that he had placed his wife under the care of a physician, and had afterwards caused a surgical operation to be performed upon her, and then carried her home, "hoping that she would treat me better than she had in the past, but she became worse instead of better, until she finally left me when we lived at Atlanta Heights in 1898;" that he had at all times been willing to take her back, and had invited her to return, but she had refused to do so; and that he had spoken to her probably twenty times, but she had never spoken to him once.

The defendant testified, that, within two weeks after they were married, her husband began to quarrel with and abuse her, and continued to do so from that time until she left him; that she was only a little more than fifteen years of age when she married.

while he was between thirty-five and thirty-six; that at the time of the birth of their first child she received injuries from which she had never entirely recovered, and which grew worse until 'an operation was performed in 1898; that her husband was jealous of her without cause, abused her, and accused her of being too free with other men, though he did not allege actual immorality; that on more than one occasion he used physical violence upon her, shaking his fist at her, threatening her with a whip, pulling her ears, throwing her to the floor and dragging her; and that he stated that he wished she would leave and return to her people. A doctor who had treated her testified that she suffered from anemia, neurasthenia, hysteria, and laceration of the perineum. He stated that he knew of no unhappiness between her and her husband; that he had examined her some times before he testified; that she had not entirely recovered from the nervous symptoms; and that her then present condition was such that she should have a servant with her all the time. The plaintiff denied all the charges of cruel treatment which his wife made against him.

On the close of the evidence the presiding judge overruled the plea to the jurisdiction, and directed a verdict for a total divorce in favor of the plaintiff, which was entered accordingly. The defendant excepted.

*E. S. Griffith*, for plaintiff in error.

*James Beall* and *Walter Matthews*, contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. It was urged on behalf of the defendant in error that the case was prematurely brought to this court, as the verdict directed was a first verdict for a total divorce, and it required two concurrent verdicts at different terms for the dissolution of the bonds of matrimony. It was therefore contended that the case was still pending in the trial court, and could not be brought to this court, under the Civil Code of 1895, §5526, which declares that "No cause shall be carried to the Supreme Court upon any bill of exceptions, so long as the same is pending in the court below, unless the decision or judgment complained of, if it had been rendered as claimed by the plaintiff in error, would have been a final disposition of the cause, or final as to some material party thereto." The procedure by which a total divorce may be obtained and the bonds of matrimony dissolved differs materially, in several

respects, from ordinary cases at law. The underlying reason for some of these differences is no doubt to be found in the fact that marriage, while termed a civil contract, is very unlike ordinary contracts, which may be made, modified, or abrogated at the will of the parties in interest. In the contract of marriage, and in the preservation and protection of the family relation, and of the offspring, the public, as well as the parties, is concerned. As instances of the recognition of this difference, the Civil Code, §2431, declares that "No court in this State shall grant divorce of any character to any person who has not been a bona fide resident of the State twelve months before the filing of the application for divorce." In no other suit is it required that the plaintiff shall reside in the State for a specified length of time. A respondent may recriminate and ask a divorce in his or her favor. Civil Code, §2433. If one verdict is found in favor of the respondent, the libelant can not dismiss his or her suit without the consent of the opposite party. §2434. In the dissolution of the marriage contract alimony may be awarded. §2435. After the separation of the parties and before final verdict, the power of transfer of his property by the husband is limited. §2436. These citations are sufficient to show a marked difference between proceedings to obtain a total divorce and ordinary actions to enforce or rescind contracts, or to recover damages for torts.

The constitution (art. 6, sec. 15, par. 1, Civil Code, §5867) declares that "No total divorce shall be granted, except on the concurrent verdict of two juries at different terms of the court." A divorce from bed and board may be granted on the verdict of one jury. Civil Code, §2425. Before the bonds of matrimony are dissolved there must be two distinct and separate trials, in each of which a verdict shall be rendered in favor of a total divorce. If the first verdict should be in favor of the defendant, no further proceeding could be had by the plaintiff towards obtaining another verdict. Where the basis of the suit is cruel treatment or habitual intoxication,, the jury, in their discretion, may grant either a total or partial divorce. §2427. In some respects, a proceeding to obtain a total divorce is like two suits, consolidated into one, the verdict in the first of which is necessary before proceeding to obtain one in the second. The second verdict declares the rights and disabilities of the parties. §2445. . It

has been held that after the rendition of two verdicts in favor of a total divorce, it is not indispensable that a judgment declaring the divorce granted should be entered up in order for the marriage to be legally dissolved. *Burns* v. *Lewis,* 86 *Ga.* 592 (13 S. E. 123). This was under the constitution of 1868, but the provision on this subject there made was similar to that in the present constitution. The Civil Code, §2441, provides that "New trials may be granted from verdicts on applications for divorce, as in other cases." This applies to either verdict. If a motion for a new trial, after the rendition of the first verdict for a total divorce, is overruled, it has been held to be a proper subject of exception to this court. *Gholston* v. *Gholston,* 31 *Ga.* 625. If so, there would seem to be no sound reason why a direction of a verdict by the presiding judge can not be brought up by bill of exceptions without the formality of moving for a new trial. The first verdict is not a mere interlocutory ruling entering into or leading up to the second trial, and as to which a bill of exceptions pendente lite should be filed. If unreversed it stands as final, though its effect is not to grant a total divorce until the second verdict is rendered. The two trials are conducted as distinctly as if they were based on two separate suits. It would be folly, if the court erred in the admission of evidence or in a charge to the jury on the first trial, to file exceptions pendente lite, and await the second trial. Even though the jury should fail to grant a total divorce on the second hearing, there would stand on the record unreversed a verdict of one jury declaring that the defendant had been guilty of the misconduct on which the suit was predicated; and if he could not by motion for a new trial or exceptions set aside that verdict, though erroneous, he would have no remedy against being branded by this unreversed declaration of the jury, whatever might be the second verdict. Such is not the law. Each trial is so far distinct that quoad hoc it may be treated as a termination of the case, within the meaning of the statutes, so as to allow a motion for a new trial to be made and exception taken to the judgment thereon, or direct exception taken to the direction of a verdict.

2. Was the presiding judge right in directing a verdict in favor of the plaintiff for a total divorce? We think not. In addition to what has been said above in regard to the peculiar nature

of actions for divorce, and the interest of the public therein, it is declared by the Civil Code, §2440, that "No verdict or judgment by default shall ever be taken in a suit for divorce, but the allegations in the petition must be established by evidence before the juries." Section 2430 declares that the confessions of a party to acts of adultery or cruel treatment must be received with great caution, and if unsupported by corroborating circumstances, and made with a view to be evidence in the cause, shall not be sufficient for the granting of a divorce. Section 2429 provides that if the adultery, desertion, cruel treatment, or intoxication complained of shall have been occasioned by collusion, with the intention of causing a divorce, or if the party complaining was consenting thereto, or if both parties have been guilty of like conduct, or if there has been voluntary condonation and cohabitation subsequently, and with notice of the acts, no divorce shall be granted; "and in all cases, the party sued may plead in defense the conduct of the party suing, and the jury may, on examination of the whole case, refuse a divorce." In divorce cases which are proceeding ex parte the duty is expressly placed upon the judge to see that the grounds are legal, and sustained by proof, or to appoint the solicitor-general, or some other attorney of the court, to discharge that duty for him. Section 2455. He should not allow a divorce to be granted by mere consent, or default, or collusion, or where no ground therefor is made out. It may be gravely doubted if it would not be erroneous for him to direct a verdict granting a total divorce in any case. At least it was so in this case. The wife pleaded and testified that her husband had been guilty of a long series of cruel acts, and even told her on several occasions that he wished she would leave and go to her people, as she was no longer of any service to him; and that he caused the separation by his own conduct. There was evidence indicating that the defendant, by reason of an injury resulting from childbirth, was afflicted with hysteria. But the jury saw her and heard her evidence, as well as that in conflict with it, and they could determine whether her statements were accurate or were the result, in whole or in part, of her unfortunate condition. The judge should not have laid hold of the situation, determined these facts for them, and directed a verdict.

*Judgment reversed. All the Justices concur.*