## McVEY et al. v. McWILLIAMS, commissioner, et al.

1. A landowner within a drainage district who has been subjected to annual assessment and drainage tax for the improvement in accordance with the provisions of the act of 1911, as amended by the provisions of the acts of 1918 and 1921, cannot discharge this liability to the commissioners of a drainage district by paying the assessment against his land in the bonds or coupons issued by such drainage district.

2. At a sale of land included within a drainage district, in conformity to law, to collect an assessment of drainage tax, the title to the land which has been drained under the provisions of the drainage law passes unencumbered to the purchaser, free from the lien of the entire assessment tax; and such land when once sold to collect an assessment of the drainage tax is not subject to be sold again in order to pay subsequent drainage-tax assessments.

3. A court of equity may appoint a receiver to make sale of lands in a drainage district, of such owners who have defaulted in payment of the drainage assessments, for the purpose of impounding the funds received from the sale, with a view to an equitable disposition of the proceeds arising from such sale, either in discharge of other installments of the tax assessment for which the land which was sold was or may be liable, or in equitably distributing the proceeds of the sale pro rata in satisfaction of the bonds or coupons of the drainage district, and in general by the application of the proceeds of the sale under order of the court.

No. 3672. JANUARY 16, 1924. REHEARING DENIED MARCH 1, 1924.

Equitable petition. Before Judge Searcy. Henry superior court. April 16, 1923.

Charles Y. McVey and others filed their petition against the drainage district, the commissioners, and the property owners in Drainage District Number one of Henry County, setting forth that they were holders of certain bonds and coupons; that the commissioners had proceeded regularly in establishing the drainage district, had made the proper assessments, and had levied the assessments as provided by law; that the assessments for the year 1921 had not been paid, except by a very few of the property owners; that the assessments for the year 1922, out of which fund the plaintiffs were entitled to have their coupons paid, had likewise not been paid, and no effort had been made to collect the assessments for either year; that this failure to pay off the assessments by the property owners created a situation that jeopardized the interests of the bondholders, in that practically all the land would have to be sold under execution, and since one sale of the property under execution would vest the title in the purchaser

under such a sale, free from the liens of future years, when the property was sold under executions for the year 1921 the holders of coupons for the year 1922 could not again sell the property under execution for assessments for that year, and consequently would lose their money; that under the law the sheriff could not sell free from future assessment liens, that is, he could not so advertise, but as a matter of fact he would be selling it free from such liens, and in this way the property would not bring its full value, as purchasers would not pay as much by reason of this uncertainty as they would were it made certain, at the time of selling, that the land would be free from encumbrance as to the tax assessments, and in this way the holders of coupons for the year 1922 and the holders of the bonds would be defeated in their rights to recover the full value of the property sold free from all liens; that there is no provision for impounding the funds in case the property were sold for more than enough to pay off the first assessment; that there is no provision of law authorizing the drainage commissioners to prorate the funds in case the money raised by the sale is insufficient to pay off all the bonds and coupons, although as a matter of law each bond and coupon in a situation like this is entitled, under equitable principles, to prorate with each other, and it is inequitable that some bondholders be paid in full and that others be not paid at all; that without the appointment of a receiver empowered to sell the property under proper orders of the court, free from liens, to impound the funds and to pay off all bondholders in full if the proceeds of the sale are sufficient for that purpose, and to prorate the proceeds of the sale in case the funds are not sufficient to pay off all, the bondholders would lose their rights under the law.

Two of the defendants, W. W. Ward and J. D. McCullough filed an answer, denying that a sale of the property for one year would divest the lien of a subsequent annual assessment, but averring that the land could be sold each year for each annual installment of principal and interest, as the lien was in rem. They further answer that they are owners and holders of sufficient bonds issued by the drainage district to pay both principal and interest, and allege that they have a right of set-off against such assessments, and the right to use the interest coupons and bonds that are due for the purpose of paying such assessments; and that they have a

right to surrender sufficient bonds of face or par value to pay both principal and interest, and to receive a discharge of the liens against their lands so included in said district. The drainage district officially filed an answer similar to the one filed by the defendants Ward and McCullough, with the exception of the question of paying assessments in bonds or coupons of bonds that are due.

The bill of exceptions recites that the case was tried under the following agreed statement of facts: "Charles Y. McVey and the Huntington National Bank of Columbus, Ohio, are the owners of the bonds and coupons set out in the petition as alleged therein. That said bonds and coupons were issued after due legal process, as alleged in the petition, and signed by the drainage commission as alleged. That the drainage commissioners have assessed the land included in the drainage district, pledged for the payment of said bonds, as alleged in the petition. That only a small portion of the assessments have been collected for the year 1921 or the year 1922, and that what has been paid was paid by local people having land assessed, and that these landowners held coupons and the sums paid were in turn paid back to those paying, for coupons held by the ones paying the assessments. That coupons for the year 1921 are still outstanding, and only a few have paid their assessments for the year 1921. That assessments are payable each year, and coupons are payable each year, the amount differing on certain bonds as the bonds do not mature all at the same time. That it will require the payment of all these assessments in order to fully pay off and retire the bonds and coupons, there being no amount levied or assessed other than for the payment of the bonds and coupons. That others hold the remaining issue of bonds and coupons, the plaintiffs owning only the portion as alleged in the petition. Land values are not salable at the present time, due to conditions surrounding farm lands. The lands would bring a better price if sold free from future assessments than they would if sold subject to them. That it is probable that land values will increase in the future. That subsequent to the filing of complaint by plaintiffs the tax-collector has placed in the hands of the sheriff execution against the lands assessed in the drainage district, for the years 1921 and 1922, and the sheriff will levy and sell, under these executions, the same land for each of the years 1921 and

1922. That W. W. Ward and J. D. McCullough, two of the defendants, are owners and holders of bonds in sufficient quantities to pay off all assessments against their property lying within the district, said bonds being purchased and bought outright. That they have paid the assessments on their lands for the years 1921 and 1922 to the tax-collector of Henry County, and have collected their coupons from the drainage commissioners on surrender of their coupons, the amount of the assessments paid being identical with the amount of their coupons held and surrendered and collected. That the attached exhibit "A" is a correct copy of all of the bonds and coupons, differing only in being filled out as to amounts, dates and signatures."

Upon the hearing the judge passed an order refusing to appoint a receiver, and expressing the opinion that "A sale of the property to satisfy the assessments levied for any certain year will not divest such lands of the lien of assessments made for subsequent years, but that such lands may be sold year after year until the entire principal and interest of the bonded debt of said district is paid in full. Such assessments cannot be paid in bonds or coupons that are due." To this judgment the plaintiffs excepted.

*W. E. Watkins,* for plaintiffs.

*Lovick G. Fortson, Randolph & Parker,* and *Reagan & Reagan,* for defendants.

RUSSELL, C. J. (After stating the foregoing facts.)

The record in this case presents three questions for decision: (1) Whether one whose land has been assessed in accordance with law and subjected to annual assessment and drainage tax for the improvement may discharge this liability to the commissioners of a drainage district by tendering to pay or by paying the assessment against his land in bonds or coupons issued by such drainage district? (2) In the event that any of the land drained under the drainage law (Acts 1911, p. 108, as amended: Acts 1918, p. 147; Acts 1921, p. 185) must be sold in order to pay one of the annual tax assessments, does the title pass unencumbered to the purchaser free from the lien of the assessment tax, or is such land subject to be sold again thereafter in order to pay subsequent drainage tax assessments? (3) May a drainage district as created by the provisions of the drainage law be placed in the hands of a

receiver; and if so, under what circumstances should a receiver be appointed?

Our learned brother of the circuit court held, and we think properly, that a drainage assessment levied in accordance with law for the purpose of draining and improving lands for the public benefit and the general good of the community, under the police power, cannot be paid in the bonds of such drainage district or the coupons of such bonds. In other words, the bonds and coupons issued by the drainage district cannot be set off against a liability of a landowner within the district to pay his fair share of the improvements. It has been held by this court (*Wayne* v. *Savannah, 56 Ga.* 448; *Hawkins* v. *County of Sumter, 57 Ga.* 166) that municipal taxes cannot be paid by obligations of a municipal corporation, which includes, of course, its bonds and coupons on the same. The reason is apparent, because the municipality, as an agency of the government, must continue to function, and for this reason requires the collection of its taxes in money; whereas, were it compelled to accept its bonds or other obligations in payment of taxes, the municipality might be unable to obtain funds to carry on the municipal government. For a similar reason the holder of bonds and coupons of a drainage district cannot meet the tax assessment for improvements to his property by tendering or paying the bonds or coupons which were necessarily issued to make the public improvement involved in the drainage of lands included therein. It is true, as argued, that the bonds represent the assessed amount of the cost of the drainage excluding the assessments levied against such landowners as may have preferred to be discharged from liability for the bonds by the payment of their assessments in cash within thirty days after the original assessment. Since each landowner is liable only for the amount assessed against his land, it may seem prima facie that payment of the amount of the general indebtedness equal to the assessment against him, or surrendering in bonds or in coupons an amount equal to the assessment for which his land is liable, would be just and equitable; but a similar case for the application of equitable principles would seem to be that a stockholder of a bank, whose deposits exceeded the assessment upon the stock for which he was liable, might well set off this indebtedness of the bank against his liability on the assessment, and yet it has been held by this court that such is not the

law. Though the bank may be indebted to the stockholder as a depositor a sum much larger than the assessment upon the stock, nevertheless, in case of failure of the bank, the assessment must be paid in full. *Swicord* v. *Crawford*, 148 *Ga.* 719 (98 S. E. 343).

In the constitution of a drainage district the object is to create a governmental agency in the nature of a corporation (*Almand* v. *Board of Drainage Commissioners*, 147 *Ga.* 532, 94 S. E. 1028) to carry on, under the exercise of the police power, a public improvement for the benefit of the public health, as well as to increase values in the community and additional productiveness to the lands involved. But while the agency is governmental and the benefit is supposed to be public, the landowners who are included within the drainage district are supposed to pay equally pro rata in all of the cost and expense and liability which may accrue. The amount of such liability cannot be ascertained, and equality in bearing the burdens cannot be determined, until all of the liabilities are paid. Where bonds running for ten years are issued, it certainly cannot be known until the conclusion of that period, and all collectible assessments have been paid, how the equality can be maintained. In any case there is a possibility that a drainage project may not succeed to such an extent that the entire amount of the bonds issued may be collectible. The bonds are based upon no security except the lands sought to be improved by the drainage; and this land, in the event of various contingencies, might sell under the levy provided by law at far less than the face value of the bonds. In such a case it would be impossible for the holders of the bonds to receive par, and the bonds would not be worth par. Had holders of bonds prior to that time been permitted to set off their bonds at their face value against their liability for assessments, it is plain that a marked inequality in favor of these bondholders would have been created. It is sufficient to say that a very good reason why the decision of the trial court is correct is that there is no provision in the statute authorizing acceptance of the bonds or coupons in payment of assessments; and another good reason is based upon the analogous decision of this court to which we have referred; while a third reason may be found in the nature and character of the governmental agency known as the drainage district created by the act of 1911, supra.

2. We differ in opinion from the lower court in his ruling that

the land can be more than once sold under the ten several assessments or judgments for drainage assessment taxes. It is provided in section 3 of the original act of 1911, supra, that a sale to satisfy any of the several assessments shall be conducted by the same rules and proceed in the same manner as sales to satisfy State and county taxes. If so, the sale when had is complete, and all of the title of the taxpayer, whatever it may be, passes to the purchaser free from any lien or incumbrance. To subject the land to sale for an assessment for one year and leave the land liable to be sold each following year for subsequent assessments would in fact be nothing more than a sale of the use of the land for one year; and of course nothing more could be derived from the sale than such an amount as represented the rental value of the land for one year; for a purchaser at such a sale, knowing the liability to resale, could not afford to give more than this. If in fact the sale is to be governed by the same rules as govern sales for State and county taxes, then the entire title passes, and not merely the right of possession for one year. Construing thus the statute, we are of the opinion that the sale of the land in a drainage district for the collection of the tax assessment against it for any one year conveys to the purchaser title free from lien just as in the case of other sales for taxes. Where sales are had to collect State and county taxes, it does not necessarily follow that the purchaser will not have to pay a far greater sum than the amount assessed for taxes, nor that the land will not bring its full value; and likewise in sales had to collect the annual tax assessment of a drainage district it is within the power of those interested in the common project to protect themselves by seeing that the land subject to the drainage assessment brings its full market value. The levy upon the judgment for drainage tax shows that there has been a failure on the part of one of the landowners liable to comply with his undertaking in which all of the landowners in the drainage district are concerned, and by which the rights of all may be affected. Common prudence and self-interest would dictate to each and all of the other landowners to see that any tract in the drainage district should be sold for as much as possible, in order that at the conclusion of the ten years the undertaking as a whole would have resulted as successfully as possible.

3.    Inasmuch as there is no provision in the drainage law for

the application of any surplus resulting from such a sale as heretofore mentioned, and since under the rules applicable to tax sales in general any surplus accruing from the sale made to collect one of the tax assessments would be the property of the defendant in fi. fa. (in a drainage-tax sale a defaulting landowner whose land had been improved), who would have a right to demand it from the sheriff, we think that the prayer of the petition in this case that a receiver be appointed should have been granted. Not for this reason alone, but also upon other grounds, we are of the opinion that in a proper case a receiver may be appointed to take charge of the affairs of a drainage district upon the failure of the drainage commissioners, tax-collector, or treasurer to proceed to collect all past-due drainage assessments, or to sell all lands in the drainage district liable to sale, or otherwise, under the direction of the judge of the superior court, to collect any or all of the indebtedness due for the improvement and pay it to the bondholders as directed.　　*Judgment reversed. All the Justices concur.*