## PURSLEY v. MANLEY.

1. Assessments for the costs of draining lands in a drainage district, under the act of 1911 (Ga. L. 1911, pp. 108, 129), are levied "against the several tracts of land" embraced in such district, "according to the benefit received," as shown by the drainage tax roll; and when an order is attached to such roll by the board of drainage commissioners for the collection of such tax, "the same shall have the force and effect of a judgment as in the case of State and county taxes;" and an execution could be issued by the tax-collector for the collection of such assessment, directed to any lawful officer to execute and return, commanding such officer that by levy and sale of the lands and tenements of a named owner, "known as tract No. 19 in Spalding County drainage district No. 1," being the land upon which the assessment was levied, "he cause to be made" the amount of such assessment.

2. The assessment being against the designated tract of land, and the execution issued by the tax-collector commanding the levying officer to sell that tract, thus being an execution in rem, the same could issue after the death of the owner of the land so assessed; and such execution, the levy and sale of said land thereunder, and the sheriff's deed made in pursuance of such sale, are not null and void for the reason that the owner of the land was dead at the time of the issuing of such execution.

No. 6358.    AUGUST 21, 1928.

Complaint for land.    Before Judge Searcy.    Spalding superior court.    October 18, 1927.

*Cleveland, Goodrich & Cleveland,* for plaintiff.

*D. R. Cumming,* for defendant.

HINES, J.  G. T. Pursley brought complaint against J. P. Manley for the possession of a lot of land containing 55.12 acres, known as tract number 19 of the Spalding County drainage district number 1.  Before introducing evidence the parties entered into an agreement to the effect that both plaintiff and defendant claimed title under a common grantor, to wit, Miss Emma Manley, who died in Spalding County on December 27, 1921.  J. P. Manley was appointed executor of her will.  The plaintiff tendered in evidence an execution dated April 8, 1922, issued by the tax-collector of Spalding County, directed to any lawful officer to execute and return, and commanding such officer that by levy and sale of the lands and tenements of Miss Emma Manley, known as tract number 19 in Spalding County drainage district number 1, he cause to be made the sum of $219.45, the amount of drainage tax for the year 1921, with fifty cents for said fi. fa., and make return to said tax-collector according to law.  The levy entry upon said fi. fa., signed by W. T. Freeman, sheriff, dated April 20, 1922, was as follows: "I have

this day levied the within fi. fa. on the following described property, to wit, 55.12 acres of land known as tract number 19 in the Spalding County drainage district number 1, levied on as the property of Miss Emma Manley by virtue of a tax fi. fa. in favor of T. R. Nutt, tax-collector, against Miss Emma Manley, issued from the tax-collector's office of Spalding County." The plaintiff also tendered in evidence a deed executed by W. T. Freeman, sheriff, which recited that on April 20, 1922, said sheriff levied upon the tract of land described as in the entry of levy, and afterwards said sheriff, on the first Tuesday in June, 1922, exposed for sale the property so levied on before the court-house door in Spalding County between the legal hours of sale, after having advertised the same according to law for the space of four weeks immediately preceding the sale, and that G. T. Pursley was the highest bidder, and the tract of land was knocked off to him for the sum of $5. The land conveyed is described as all "that tract or parcel of land situate, lying, and being in Spalding County, Georgia, and being 55.12 acres of bottom land known as tract number 19 in Spalding County drainage district number 1." The defendant objected to the introduction of said fi. fa., levy, and deed, on the ground that it appeared from the agreed statement of facts that Miss Emma Manley was dead on the date said fi. fa. was issued and levied and at the time said land was sold by the sheriff, and that the fi. fa., levy, and deed were therefore illegal and void. The court sustained the objection. The plaintiff then announced closed, and the court granted a nonsuit and dismissed the case. Error is assigned upon these rulings.

After the classification of the land in a drainage district and the ratio of assessment of the different classes made thereon have been confirmed by the court, the drainage commissioners are required to prepare an assessment roll, giving a description of all the land in such drainage district, the names of the owners so far as can be ascertained from the public records, "and the amount of assessment against each of the several tracts of land." This assessment shall be made "against the several tracts of land according to the benefit received, as shown by the classification and ratio of assessment made by the viewers and confirmed by the board of drainage commissioners. This drainage tax roll shall be made in duplicate, signed by the chairman and secretary, and one copy filed with the

drainage record and the other delivered to the sheriff or other county tax-collector. There shall be appended an order to collect said assessments, and the same shall have the force and effect of a judgment as in the case of State and county taxes. It will thus be seen that the costs of draining land in a drainage district are assessed directly against the several tracts of land embraced in the district, and not against the landowners. The order of the board of drainage commissioners, directing the collection of said assessments, has the force and effect of a judgment as in the case of State and county taxes. Said assessments constitute the first and paramount lien, second only to State and county taxes, upon the lands assessed, and shall be collected in the same manner by the same officers as State and county taxes are collected. Acts 1911, pp. 108, 127, 129; 8 Park's Code Supp. 1922, §§ 439(ee), 439(ii).

Was the execution issued against this land, to collect the drainage assessment due in 1921, void because it was issued after the death of the owner of this land, it being against the land assessed for the tax, and not against the owner of the land? It is insisted that under the Civil Code, § 1018, "Taxes are to be charged against the owner of property if known, and against the specific property itself if the owner is not known;" and that this section is applicable to assessments for drainage taxes. This section has nothing to do with the assessment of drainage taxes. The method of assessing land for drainage taxes is specifically provided for in the drainage act. The method of assessment and the method of collection of a drainage tax are two separate and distinct things. The drainage act provides the method of assessing property for drainage taxation. Section 1018 provides the method for assessing property for ordinary county and State taxes. The drainage act does provide, as we have shown, that drainage taxes shall be collected in the same manner and by the same officers as State and county taxes are collected. By the act of 1918 it is provided that "it shall be the duty of the tax-collector to collect such assessments in the same manner and at the same time as he collects State and county taxes, and issue his receipt therefor," and that the tax-collector shall "issue his execution to enforce collection of the same, which shall proceed as ordinary executions for State and county taxes." The provisions of the drainage act of 1911 and that of 1918 refer, not to the assessment of property for drainage taxes, but for the issuing of execu-

tions therefor, and provide the method of their enforcement. Conceding the general rule to be, in the absence of statute, "that taxes are to be charged upon the owners of property" (*Burns* v. *Lewis,* 86 *Ga.* 591, 602, 13 S. E. 123; *Miller* v. *Brooks,* 120 *Ga.* 232, 47 S. E. 646; Civil Code, § 1018), and that this general rule is applicable to assessments for drainage taxes, and that this drainage tax is in effect charged to the owner of this land, the assessment was against described land as the property of Emma Manley.

But the real question in this case is, where an assessment for drainage tax is properly made against specific land of a named owner, and while the owner is in life, and the owner afterwards dies, can the tax-collector issue an execution against such land as the property of such owner and have the same levied and the land sold to pay such tax? We have seen that the proper order upon the drainage tax roll has "the force and effect of a judgment." On the death of a defendant after final judgment, when no execution has been issued previously to such death, execution may issue as though such death had not taken place. Civil Code, § 5616. "At common law, if a party died after judgment, but before the issuing of execution, it was necessary to issue a scire facias to make the heir or legal representative of such decedent a party to the judgment; but since the passage of the judiciary act of 1799, which makes the judgment a lien on all the property of the defendant from the time of its rendition, the reason of the rule, and consequently the rule itself, has ceased to exist in this State." *Smith* v. *Lockett,* 73 *Ga.* 104. So where a plaintiff dies after judgment has been entered in his favor and before the issuance of an execution thereon, execution may be issued in his name. *Mims* v. *McKenzie,* 22 *Ga. App.* 571 (96 S. E. 441). Where a judgment has been obtained and execution has issued in the lifetime of the defendant, his subsequent death will not arrest the collection of the debt by a levy and sale of the intestate's property. This was the rule at common law. *Brooks* v. *Rooney,* 11 *Ga.* 423, 429 (56 Am. D. 430); *Hudgins* v. *McLain,* 116 *Ga.* 273. Since the adoption of the Code, executions issued for State and county taxes stand upon the same footing, as to levy and sale of property, as executions issued upon judgments at law. *Byars* v. *Curry,* 75 *Ga.* 515. By parity of reasoning, this principle is applicable in the issuing of executions to collect assessments of a drainage tax.

We have seen that an assessment for a drainage tax constitutes a first and paramount lien, second only to State and county taxes, upon the lands assessed. So we are of the opinion that where such an assessment is made during the life of the owner of the land, the tax-collector can issue an execution against the land as the property of the owner for the purpose of collecting such tax; and that a sale of land under the levy of such an execution, when properly made, will convey to the purchaser at sheriff's sale a good title. Of course, a sale to satisfy an execution issued to collect a drainage tax must be conducted under the same rules and proceed in the same manner as sales to satisfy State and county taxes. *McVey* v. *McWilliams,* 157 *Ga.* 220, 226 (121 S. E. 641). There is nothing to the contrary of what is said above, in *Miller* v. *Brooks,* supra, where it was held that "An execution for municipal taxes, not describing any particular property, but simply directing the seizure of the goods and chattels, lands and tenements, of 'the estate of J. Miller,' is void, and a purchaser at a sale under the levy of such an execution obtains no title." In the instant case, the execution commanded the officer to levy the drainage tax execution upon described land, the same being the land assessed for the payment of the drainage tax. In *Ayer* v. *Chapman,* 146 *Ga.* 608 (91 S. E. 548), the tax fi. fas. involved in that case were against "Est. of Mrs. O. Oliver," and against "Mrs. O. Oliver," after her death. Besides, the fi. fas. issued for taxes which accrued many years after her death. The attack on the fi. fas. was based upon the ground that the tax fi. fas. issued against the estate of Olivia Oliver instead of against the property itself, or against the owner. Besides, the decision in that case was not by a full bench. It follows from what has been said that the execution which issued to collect this drainage assessment, and a sale duly made in pursuance of a levy thereon of the land assessed for the drainage tax, were not void; and the purchaser at such sale acquired a good title to the land assessed for such tax, and so levied on and sold. So the court erred in rejecting this execution, the levy thereon, and the sheriff's deed made in pursuance of such sale thereunder.

*Judgment reversed. All the Justices concur, except Russell, C. J., and Hill, J., who dissent.*

Russell, C. J., dissenting. The original drainage act of 1911 (Acts 1911, p. 108), which merely created a uniform method of

creating drainage districts and provided the machinery for the operation of the law, enacted rules by which the amount of assessments upon the landowners of the drainage district should be determined. No landowner was made liable to an assessment if he was able to pay his proportionate part of the expense of draining the drainage district in cash. The assessments which entailed liability upon the landowner in the drainage district were confined to those for whose benefit it was necessary to issue bonds, and the payment of the bonds was guaranteed by the liability of these land-owners, and none other. Consequently, provision was made for the contingency in which a landowner whose liability had been imposed by the issuance of bonds might default in one of the annual payments which was designed to extinguish the bonded indebtedness, and it was provided that in such a contingency the assessment originally entered upon the rolls should have the force of a judgment; that the tax-collector should issue a fi. fa., the lien of which should rank next to the lien of the State and county for their taxes, against the property drained. There was no provision whatever in the act of 1911 as to when the fi. fa. should be issued. By the act of 1918 (Acts 1918, p. 147) to supply this defect it was enacted that "The tax-collector shall, not later than January 1st of each year, make a report of all unpaid assessments due for the preceding year, . . and shall at the same time issue·his execution to enforce collection of the same, which shall proceed as ordinary executions for State and county taxes." The original act said they should be collected in the same manner, by the same officers, as State and county taxes are collected; but it did not fix a date on or before which the execution must be issued or enforced, and the positive direction that the fi. fa. when issued and enforced "shall proceed as ordinary executions for State and county taxes" was not embodied in the original act. This legislation subjected levies and sales of real estate subject to drainage taxes to the same rules, in every respect, as had previously been applicable to the collection of State and county taxes. In the present case the execution was not issued prior to or on January 1, as required by the drainage law and was not issued until April 8, 1922, instead of on January 1, 1922, as required by law. If a tax for drainage as required by the amendment of 1918, supra, "shall proceed as ordinary executions for State and county taxes," not only did the fi. fa. levied in this

case fail to be issued as required by the act specifically dealing with the subject of executions, but it did not proceed under the rules applicable to State and county taxes when it was issued after the death of Miss Emma Manley. Whatever may have been the rulings of this court as to the issuance of a fi. fa. against a deceased person, founded upon a judgment obtained against the deceased before his death, in ordinary civil actions between individuals, a different rule has been established by this court as to a tax fi. fa. It has uniformly been held, in every case where taxes were involved, that a tax fi. fa. issued against the owner of real estate after his death was void, and that a sale of property under such fi. fa., though it had formerly been the property of the deceased person, was also void and a deed executed by the sheriff in pursuance of the sale conveyed no title to the purchaser.

The cases cited by the majority, to sustain the proposition that a fi. fa. issued upon a judgment obtained before the death of the defendant in fi. fa. in such a civil action may have execution issued thereon upon which a levy and sale may be had, present a different case from one in which the sovereign, dealing with its subjects in the exercise of its prerogative to collect means for the support of the government, proceeds to sell the property of a citizen whose default may be due entirely to lingering illness and death. In any event, all laws in derogation of the rights of a citizen are to be strictly construed; and in my opinion the amendment of 1918 not only specifically requires that the fi. fa. be issued by the tax-collector at the same time "as he collects State and county taxes," and in the same manner and by the same officials as State and county taxes are collected, as required by the act of 1911, but goes further and classifies it with the well-settled method of proceeding in the collection of State and county taxes against a dead person subject thereto, by enacting that the proceeding of issuing the fi. fa. shall be the same and controlled by the rules governing the issuance of "executions for State and county taxes." There is but one question presented by this writ of error. Can a fi. fa. to collect an assessment of drainage tax as provided for in the act of 1911 be issued against a deceased owner of the land, or proceed against such deceased owner after the death of the owner of the land subject to the drainage tax? I am of the opinion that the trial judge correctly ruled in holding that a fi. fa. could not have been legally

issued against Miss Emma Manley after her death, and that consequently the levy and sale thereunder were nugatory, with the result that the deed under which the plaintiff relied for recovery was void and inadmissible as a muniment of title. Section 34 of the drainage act of 1911 provides this drainage assessment "shall constitute the first and paramount lien, second only to State and · county taxes, upon the lands assessed for the payment of said bonds and the interest thereon as they become due, *and shall be collected in the same manner by the same officers as State and county taxes are collected.*" By the amendment of 1918 it is enacted that "The tax-collector shall, not later than January 1st of each year, make a report of all unpaid assessments due for the preceding year to the board of drainage commissioners, and shall at the same time issue his execution to enforce collection of the same, which shall proceed âs ordinary executions for State and county taxes." In *Campbell* v. *Board of Drainage Commissioners,* 156 *Ga.* 64 (118 S. E. 720), and *Goolsby* v. *Board of Drainage Commissioners,* 156 *Ga.* 213 (6*b*) (119 S. E. 644), we held that an execution issued for the collection of drainage tax is of the same nature as a tax execution, and that for that reason an affidavit of illegality is not the proper remedy to contest the legality of such an execution. See *Webb* v. *Newsome,* 138 *Ga.* 342, 345 (75 S. E. 106). In *McVey* v. *McWilliams,* 157 *Ga.* 220, 226 (supra), in dealing with a sale following the levy of a drainage assessment, we held that "A sale to satisfy any of the several assessments shall be conducted by the same rules and proceed in the same manner as sales to satisfy State and county taxes." What then is the rule applicable to the issuance of executions, levy, and sale of property sought to be subjected to State and county tax fi. fa.?

Section 1018 of the Civil Code of 1910, which was not originally of legislative origin, declares: "Taxes are to be charged against the owner of property if known, and against the specific property itself if the owner is not known. Life-tenants, and those who own and enjoy the property, are chargeable with the tax thereon. Hence, while the public may treat property as belonging either to the maker or the holder of a bond for titles, when the latter is in possession, yet as between the parties the one receiving the rents or enjoying the use is liable for the tax." The latter part of this section, referring to life-tenants and others, who may own and enjoy property, was

taken from the decision of this court in *National Bank of Athens* v. *Danforth*, 80 *Ga.* 55 (7 S. E. 546), written by Mr. Chief Justice Bleckley, but has no application in the case at bar. The part with which we are now concerned (for it directs against whom the tax execution may be issued in each particular case, by declaring that taxes are to be charged against the owner of property if known and against the specific property itself if the owner is not known) states a rule which was taken from the decision of Chief Justice Bleckley in *Burns* v. *Lewis*, 86 *Ga.* 591, 602 (supra), couched in the following language: "In this State, the universal rule, unless some statute can be shown to vary it in particular instances, is that taxes are to be charged upon the owners of property. Owners, therefore, have an interest in being properly designated in executions which issue for the collection of taxes upon their property, or, if they can not be designated with reasonable certainty, that the property shall be pointed out in the executions as authority for seizing it irrespective of ownership, or as the property of some particular person. . . The owner of property must be a natural person, a corporation, or a quasi person or entity, such as a partnership. The law recognizes no other owners of property." In the present case it can not be said that either a corporation or a partnership is referred to, and the record shows that there was no such natural person in life at the time of the issuance of the tax execution or the levy or the sale of the property as Emma Manley. In the case of *Miller* v. *Brooks*, 120 *Ga.* 232 (supra) the execution issued against "the estate of A. J. Miller," and it was held that on the face of the assessment and execution the name of no owner appeared and that the fi. fas. in question were void. Mr. Justice Cobb in that case cited a large number of authorities from various jurisdictions of the Union, a majority of which support the ruling of Chief Justice Bleckley which I have quoted, and concluded by expressing the unanimous opinion of this court that under the provisions of section 778 of the Code (section 1018 of Code of 1910), as well as under the general principles of law applicable to such cases, the execution was void because it was not issued against any person. It is true that in the present case it does not appear but that the original assessment was made against Miss Emma Manley, but this is immaterial, because, regardless of the prior assessment, the tax-collector is required by the act of 1911 to issue the execution against

52

the owner of the property, and at the time the execution in this case was issued Miss Emma Manley was dead and she had disposed of her ownership of the property by will. In *Ayer* v. *Chapman*, 146 *Ga.* 608 (supra), it was held that "Tax fi. fas. against the estate of O. and against O., issued after her death, were void, and a sale of the property under such fi. fas., though it had formerly been the property of O., was also void, and a deed executed by the sheriff in pursuance of the sale could not operate to convey title to the purchaser." The opinion of the court was delivered by Mr. Justice Beck; and while Atkinson and Hill, JJ., dissented from the judgment of reversal, their dissent was based upon a ground other than that dealt with in the headnote just quoted.

Mr. Justice Hill concurs in this dissenting opinion.