[Civil No. 3847.   Filed July 15, 1937.]

[70 Pac. (2d) 447.]

AUTOMATIC   VOTING   MACHINE   CORPORA-
TION, Appellant, v. COUNTY OF MARICOPA,
STATE OF ARIZONA, Appellee.

Messrs. Kibbey, Bennett, Gust, Smith & Rosenfeld, for Appellant.

Mr. Harry Johnson, County Attorney, and Mr. Mark Wilmer, his Deputy, for Appellee.

LOCKWOOD, J.— ■ This is an appeal by Automatic Voting Machine Corporation, hereinafter called plaintiff, from a judgment in favor of County of Maricopa, a municipal corporation of the State of Arizona, hereinafter called defendant. The defendant demurred to the complaint on the ground that it did not state a cause of action, and the demurrer being sustained by the court, and plaintiff refusing to plead further, judgment was rendered in favor of defendant. The question before us then is whether the complaint states a cause of action. Its allegations, which we must assume for the purpose of the appeal state the facts, may be summarized as follows:

On or prior to the 29th day of October, 1934, plaintiff was the owner of certain voting machines which were devised for the purpose of providing a better method of voting at elections than the common one of paper ballots. On that date the parties hereto entered into a certain agreement, in writing, in regard to forty-five of such machines. The portions of such agreement which it is necessary for us to consider on the appeal read as follows:

"THIS AGREEMENT, . . .

"1—Witnesseth: That for and in consideration of the sum of Eleven Thousand Sixty-eight and 20/100 Dollars ($11,068.20) paid in County Warrants, by the County, receipt of which is hereby acknowledged, the

Company hereby rents to the County forty-five (45) voting machines, hereinafter described, for use in the Primary and General elections of the year 1934. . . .

"7—The Company agrees that the County, at its option, shall have the right to rent said forty-five (45) voting machines for the Primary and General Elections of 1936 for the sum of Eleven Thousand Sixty-eight and 20/100 Dollars ($11,068.20). Said option to be exercised between the first day of July, 1935, and the 1st day of August, 1935, and to be in writing and the rent thereunder to be paid on or before June 30, 1936. Said rental contract to give the County the option of renting said machines for the sum of Eleven Thousand Sixty-eight and 20/100 Dollars ($11,068.20) for each next succeeding Primary and General Election thereafter.

"8—The Company agrees that the County, at its option, shall have the right to purchase said 45 voting machines at any time hereafter for the sum of $1118.00 per machine plus interest from date at 6% per annum, and that all payments that shall have been paid for rent under this or subsequent contracts for rent shall be applied on the purchase price.

"9—The County agrees that, while said 45 rented and 16 loaned machines are in its possession, it will be responsible for their safety and good care, and, by suitable storage and insurance, protect them from loss and injury.

"10—The County agrees that, if and when it shall cease to exercise its right to rent or purchase said 45 machines as herein provided, it will upon request of the company, ship them to the Company at Jamestown, New York in good condition except for ordinary wear, freight charges prepaid."

At the time this agreement was made, the parties did not contemplate merely a temporary use of the voting machines at the election of 1934 and 1936, but it was the intention and expectation of both parties that they would continue to be used at all succeeding primary and general elections until the payments denominated as rental in the agreement, together with

such other funds as the defendant might have available for such purposes, would be sufficient to pay the balance of the purchase price fixed in the agreement, whereupon the title thereto would pass to the defendant.

These machines were received by the defendant and used during the primary and general elections of 1934. Thereafter, and on the 16th day of July, 1935, a new agreement was made between the parties, substantially similar in substance to the one just quoted, but providing also that the sixteen voting machines which had been loaned the defendant might be purchased in the same manner, and that the installments of $11,068.20, which were to be paid for the use of the machines at each biennial and primary and general election, were changed so that the payment to be made should be whatever amount was saved the county at the election by the use of such machines, the other conditions being the same as the original contract.

In the spring of 1935, the county assessor of Maricopa County assessed the sixty-one voting machines covered by the agreements as being the property of the plaintiff, and the defendant county thereupon levied a tax on the machines based upon such assessment in the sum of $2,264.72, and demanded payment of the same from plaintiff, threatening that if the levy was not paid the machines would be seized and sold for the taxes. The plaintiff, in order to prevent the seizure, was compelled to pay, and did pay, the whole of said sum to the assessor, although it is protested that in so far as the forty-five machines covered by the first agreement were concerned, it was the payment of an illegal and void tax, for the reason that such machines were, so far as taxation was concerned, the property of the county and, therefore, not subject to taxation at all. Thereafter this suit was brought for the purpose of recovering the pro rata taxes paid by plaintiff

aforesaid on the forty-five machines bought on the first contract, plaintiff admitting that the additional sixteen machines were its property at the time of the assessment, and it was liable for taxes thereon.

The vital point in the case is whether or not the forty-five voting machines in question were the property of the defendant. If so, they were exempt from all taxes under article 9, section 2, of the Constitution of Arizona as being county property.

It is the theory of plaintiff that the agreement above referred to is a conditional sales contract, and that property covered by contracts of this nature is, so far as taxation is concerned, the property of the buyer and not the seller, and that as between the parties the taxes must be paid by the buyer. In support thereof it cites many authorities and, indeed, we think that if the transaction be the ordinary conditional sale, the decided weight of authority is to that effect. As was said in the case of *National Bank* v. *Danforth,* 80 Ga. 55, 7 S. E. 546, 550, dealing with a very similar question affecting real estate:

"With reference to the public, we hold that the assessment, in case of an outstanding bond for titles, where the holder of it is in possession of the premises, may be made either against such holder or against the maker of the bond, the person in whom the legal title rests for the time being; and a sale by the public authorities founded on an assessment against either would pass the title, no doubt, as against the other, if it were made for the taxes of that property alone; because it is no less the duty of the one than the other, relatively to the public, to pay taxes, or to see that they are paid. But as between themselves it is very clear that the person who is in possession, enjoying the property itself or its rents and issues, ought to be charged, and is chargeable, with the taxes. If the vendor retains possession, and gets his interest and income too, of course he ought to pay taxes. If the vendee takes possession, and receives the income from

the property, he ought pay the taxes, the vendor being charged with taxes on the unpaid purchase money, and in this case the whole of it is unpaid, relatively, to Mrs. Danforth, the maker of the bond for titles.''

We think this is but just. The person in possession of property under a conditional sales contract, who has the enjoyment and use thereof and receives all the benefits thereof, with the purpose of ultimately acquiring title, is certainly morally bound, as between the parties, to pay the taxes. The precise question arose in the case of *Jordan* v. *Baggett,* 37 Ga. App. 537, 140 S. E. 902, 903, and the court reaffirmed the doctrine above stated in the following language:

''*As between the parties* to a conditional sale of personalty, the purchaser in possession is the one liable for the taxes, but the public authorities may treat the property as belonging indifferently to either the purchaser or the seller, and may proceed to assess and collect the taxes accordingly. [Citing cases.]'' (Italics ours.)

The matter was fully discussed in *State* v. *White Furniture Co.,* 206 Ala. 575, 90 So. 896, 897, and the court said:

''This court has repeatedly said that the title of conditional vendor of personalty is more than a mere lien for the security of the purchase money. [Citing cases.]

''It is also an established doctrine in this state that under such contracts, though possession has passed to vendee, the risk of loss, in case the property is destroyed, follows the legal title; and hence, if the title has not passed, the loss falls on the vendor. [Citing cases.]

''Nevertheless, the retention of title by a vendor of personalty does not make him the absolute owner of the property. [Citing cases.] . . . And in *Steele* v. *State,* 159 Ala. 9, 13, 48 So. 673, 674, we said:

'' 'The contract committed the property to the defendant (the vendee) for himself, and not for the ven-

dors. He had the rights of user and enjoyment which are essential characteristics entering into the legal notion of property. The contract did not contemplate a redelivery of the property to the vendors so long as its terms were observed, and its character was fixed upon its execution and delivery. If honestly entered into by the defendant it did not reserve to the vendors a property right which is protected by the statutes against larceny; nor did it confer possession on the defendant as clerk, agent, servant, or apprentice of vendors, so as to render him amenable to the statute against embezzlement.'

"These cases lend support to the view that a conditional vendor's title, before default in payment by the vendee, and before election by the vendor to reclaim the property and thereby release the debt, is a special property, and that the general and beneficial ownership is in the vendee; and hence that the vendor's taxable interest, if not exempted by law, is the money value of the purchase money debt, regarded as a solvent credit, while the vendee's taxable interest is the general property right."

We think this rule, as between the parties, is correct.

But is the contract in question in truth one of conditional sale? Plaintiff contends that it is and cites many cases that hold that, notwithstanding the payment is denominated as "rental," if the real intention of the parties is that the title shall eventually pass to the purchaser upon the fulfillment of certain conditions, it is a conditional sale, notwithstanding that different phraseology is used in the contract. It also calls our attention to section 2908, Revised Code of 1928, which reads, in part, as follows:

"§ 2908. *Definition of terms.* In this chapter, 'conditional sale' means any contract for the sale of goods under which possession is delivered to the buyer and the property in the goods is to vest in the buyer at a subsequent time upon the payment of part or all of the price, or upon the performance of any condition or the happening of any contingency; or any contract for the

bailment or leasing of goods by which the bailee or lessee contracts to pay as compensation a sum substantially equivalent to the value of the goods, and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming the owner of such goods upon full compliance with the terms of the contract.''

We think this definition which, by its terms, only applies to the phrase ''conditional sales'' as used in chapter 67, Revised Code of 1928, must be read in connection with sections 2889, and 2904, Revised Code of 1928, which are in the following language:

''§ 2889. *Primary rights of parties.* The buyer under a conditional sales contract has the right, when not in default, to retain possession of the goods, and to acquire the property in the goods on the performance of the conditions of the contract. The seller is liable to the buyer for the breach of all promises and warranties, express or implied, made in the contract, whether the property in the goods has passed to the buyer or not. *The buyer is liable to the seller for the purchase price, or for instalments thereof,* as the same shall become due, and for breach of all promises made by him in the contract, whether the property in the goods has passed to the buyer or not.'' (Italics ours.)

''§ 2904. *Election of remedies.* After the retaking of possession the buyer shall be liable for the price only after a resale and only to the extent of the deficiency.* Neither the bringing of an action by the seller for the recovery of the whole or any part of the price, nor the recovery of judgment in such action, nor the collection of a portion of the price, shall be deemed inconsistent with a later retaking of the goods, but such right of retaking shall not be exercised by the seller after he has collected the entire price, or after he has claimed a lien upon the goods, or attached them, or levied upon them as the goods of the buyer.''

It will be seen that these last two sections state specifically that under a true conditional sale there is an absolute liability on the part of the buyer for the

purchase price in case the seller elects to hold him therefor. The question of the necessity of an absolute liability of a purchaser in a conditional sales contract arose in the case of *McArthur Bros. Merc. Co. v. Hagihara,* 22 Ariz. 100, 194 Pac. 336, 338, 13 A. L. R. 1038, and Justice BAKER very tersely, but correctly, stated:

"There can be no sale at all without an agreement, express or implied, to pay. The purchaser's promise to pay is always absolute, otherwise there is no sale, but only an option."

■ On examining the contract between plaintiff and defendant, it will be seen that nowhere therein is there any agreement by the defendant that it will pay the full purchase price of the machines, either as rental or otherwise, nor can the seller compel such payment. On the contrary, the contract expressly provides that the first payment for use of the machines at the election in 1934 is the only binding obligation on defendant, and that further payments should only become due in case the defendant at a later date determined to, and did, use the machines at subsequent elections, each of such later elections requiring a reconsideration of the advisability of the use of the machines by defendant. We think it is plain that the reason the contract was drawn in this manner was to avoid a conflict with the state budget law, such as arose in the case of *American-La France and Foamite Corporation* v. *City of Phoenix,* 47 Ariz. 133, 54 Pac. (2d) 258. That was also a rental contract in form, but it was contended that it was in reality a conditional sales contract. We pointed out that it constituted a binding obligation upon the city of Phoenix to pay for the property in question, even though the payments covered installments for a period of thirty-six months, and that the obligation thus incurred must be taken as being the

entire purchase price, even though payments were made in installments, and the contract was void as in violation of the budget law.

If the present contract be a conditional sales one, there must be, as was said in the case of *McArthur Bros. Merc. Co.* v. *Hagihara, supra,* a binding obligation to pay the full amount of the purchase price. If the defendant at any time might decide to make no further payments and was under no legal obligation then to make them, it was an option of purchase, and not a true conditional sale. Plaintiff may not blow both hot and cold. It cannot claim that the contract does not compel the defendant to pay the full purchase price, and still that the agreement is one of conditional sale. Nor can it contend that there is a binding obligation for the full purchase price over a period of years, without coming in conflict with the provisions of the budget law.

We are of the opinion that the contract in question was one of option to purchase, and not a conditional sale, and as such it did not violate the budget law and was within the power of the county to make. But, in such a case, the plaintiff was the owner of not merely the legal but the equitable title to the property until the option was fully exercised so that plaintiff was under the duty of conveying title to the defendant, and in the absence of a special agreement that defendant should reimburse plaintiff for any taxes levied thereon, plaintiff may not recover a tax to which, as the records show, the only objection made was that the property belonged to the defendant and not to the plaintiff.

For the foregoing reasons, the judgment of the superior court of Maricopa county is affirmed.

McALISTER, C. J., and ROSS, J., concur.