[Civil No. 4012. Filed October 3, 1938.]

[82 Pac. (2d) 1095.]

ORIS HOLDREN, Appellant, v. C. WARREN PETERSON, JOHN A. FOOTE and GEORGE FRYE, as Members of the Board of Supervisors of Maricopa County, and AUTOMATIC VOTING MACHINE CORPORATION, a Corporation; A. G. SMOOT (Intervener), Appellees.

Mr. D. O. Brown, for Appellant.

Mr. John W. Corbin, County Attorney, Mr. Lin Orme, Jr., his Deputy, for Board of Supervisors of Maricopa County, Messrs. Gust, Rosenfeld, Divelbess, Robinette & Coolidge, for Appellee Automatic Voting Machine Corporation, Jacob Morgan, for Intervener-Appellee, A. G. Smoot.

LOCKWOOD, J.—Oris Holdren, hereinafter called plaintiff, brought suit against C. Warren Peterson, John A. Foote, and George Frye, as members of the Board of Supervisors of Maricopa County, hereinafter called the supervisors, and the Automatic Voting Machine Corporation, a corporation, hereinafter called the company. The complaint alleges, in substance, as follows: That the supervisors on the 17th day of March, 1937, declared their intention of accepting from the company the title to certain voting machines, by an instrument which reads, so far as material to this case, as follows:

"Bill of Sale.

"Whereas, the Automatic Voting Machine Corporation, a corporation, hereinafter designated as the 'Corporation,' is the owner of sixty-one (61) voting machines which have been used in primary and general elections held in the County of Maricopa, and

"Whereas, the County of Maricopa, hereinafter designated as the 'County,' is desirous of continuing the use of said machines in the county elections and the said Corporation is desirous of demonstrating the efficiency and economy effected by the use of said machines and is desirous of continuing said machines in use in said county, and

" . . .

"Now, Therefore, Know All Men by These Presents:

"That the said Automatic Voting Machine Corporation, a corporation, does, by these presents, bargain, sell and convey unto the said Maricopa County, a body politic, the following described personal property, to-wit:

"Sixty-one (61) voting machines, now in the possession of Maricopa County,

"To Have and to Hold the Same, subject, however, to the following conditions:

"This conveyance is made as a voluntary conveyance by the aforesaid Corporation to the said County to enable the said County to use said machines in

its elections without expense or cost to the County, said Corporation agreeing to accept, as compensation for the use of said machines, such sum as the County shall save out of the usual expense of holding elections by the paper ballot method, by the use of said machines at elections,

"The County shall be under no obligation or liability for the payment of the value of said machines, but the corporation shall be entitled to receive such sums as the County shall save by the use of said machines in elections for this conveyance and as compensation for the use of said machines without, however, being under any obligation to use said machines in elections. (Giving method of computing savings).

"So long as the County shall continue to use said machines in its elections, the amount saved by the use thereof shall be paid to the Corporation until the amounts saved shall equal the purchase price of said machines, without interest, at which time the Corporation shall lose all further interest in or claim to said machines, or the savings effected by the use thereof. If, at any time, the County shall not use said machines in any election, it shall, thereupon, surrender them to the Corporation.

"The purchase price of said machines, allowing credit for sums which the County has previously applied thereto, is the sum of $46,451.76. When, as above set forth, the savings shall equal this sum and shall have been paid to the Corporation, the Corporation shall have no further interest in or claim to said machines, or to the savings made by their use.

"It is the purpose and intention of this conveyance to put the legal title to said machines in the County in order that the County may have the use and benefit thereof and may acquire title thereto free and clear of all claims by the Corporation by the application of the actual savings effected to the satisfaction of the purchase price thereof. It is not the purpose or intention of either the Corporation or the County to establish an actual purchase by the County or the incurring of an actual obligation by the form herein adopted but this arrangement has been adopted in a good faith attempt on the part of the parties hereto

to secure to the County the benefits of the use of these machines.

"In witness whereof, the said Corporation has caused this instrument to be executed this 15th day of April, 1937."

It is then alleged that such instrument is illegal and void for the reasons, (a) that it is a conditional sales contract in violation of the budget law; (b) that it is a chattel mortgage pledging the property of the county; (c) that it violates public policy for the reason that the county, in order to protect the equity which it now has in these machines, will be compelled to pay the balance of the purchase price; (d) that the payments will continue several years in the future, and thereby bind the Board of Supervisors and Maricopa county beyond the term of office of the present members; and (e) that the sole purpose of the instrument is to place the title to the machines in Maricopa county, in order to relieve the company from paying taxes thereon. The prayer was that it be declared illegal and void, and that the supervisors be enjoined and restrained from accepting it.

The supervisors answered, admitting the making of the conveyance aforesaid, and that they intend to accept it for the reason, in substance, that they now have in force with the company a certain contract in regard to such voting machines, and that by reason of various provisions of said last-mentioned contract, it is to the advantage of the county to abandon it, and accept the contract set forth above.

The company did not answer, but demurred generally to the complaint. Thereafter, A. G. Smoot asked leave of the court to intervene in the action, which leave was granted, and he filed an answer and cross-complaint setting up many matters, and asking both in his answer and cross-complaint not only that

the instrument set forth in the complaint be declared illegal and void, but further that the defendants be enjoined from in any manner attempting to interfere with a certain judgment theretofore rendered, declaring that said machines were subject to taxation. The company demurred to the answer and cross-complaint of intervener, on the ground that it did not state a cause of action against either defendant. The demurrer of the company to the original complaint was sustained, and plaintiff refusing to plead further, judgment was entered dismissing the action, whereupon plaintiff appealed.

█ It does not appear from the record that judgment was ever rendered on the answer and cross-complaint of the intervener, or that he ever attempted to appeal from any order made by the trial court. We cannot, therefore, consider the brief filed by him.

█ The sole question for our consideration, therefore, is whether or not, for any reason, it was beyond the power of the supervisors to accept the instrument above set forth. If it is within their jurisdiction, the trial court properly held that the complaint stated no cause of action. If, on the other hand, it was illegal and void, the court should have granted the injunction. Upon examining the instrument carefully, it is obvious that it is of a very peculiar and unusual nature. It is entitled "Bill of Sale." It contains many "Whereases" setting up the situation existing between Maricopa county and the company, and goes on to state:

"That the said Automatic Voting Machine Corporation, a corporation, does by these presents, bargain, sell and convey unto the said Maricopa County, a body politic, the following described personal property, to-wit:

"Sixty-one (61) voting machines, now in the possession of Maricopa County."

If it stopped there, there can be no question that it would be an ordinary conveyance of absolute title to the machines mentioned therein by the company to the county, and since counties are authorized by the provisions of section 1242, Revised Code 1928, to use voting machines at elections, we can see no reason why the acceptance of such a conveyance would be illegal. It does not, however, stop with this language, but continues with various conditions and provisos. It first says that the conveyance is to enable the county to use the machines without any cost, but then adds that the company will accept as compensation for such use whatever the county may save by using the machines instead of proceeding in the ordinary method of election by ballot, the method of ascertaining the amount saved being elaborately worked out. It expressly stipulates that the county is under no obligation to buy the machines or continue their use, but provides that so long as the county does use them, it must pay to the company the amount so saved until that amount equals the purchase price of the machines, fixed at something over $45,000, and that if it fails to use the machines for any election, it shall immediately surrender them to the company. It is then agreed that when the savings paid to the company shall equal the $45,000 aforesaid, the company shall have no further interest or claim to the machines or to the savings made by their use.

It is obvious to us from the terms of the instrument and the answer of defendants that this is an attempt to provide a manner whereby the county of Maricopa may purchase the voting machines in question without any direct increase of taxation or a violation of the budget law, and without imposing upon the company the burden of paying the taxes on these machines until they are fully paid for by the county, as we have held it must do under the present existing

contract between defendants. *Automatic Voting Mach. Corp.* v. *Maricopa County,* 50 Ariz. 211, 70 Pac. (2d) 447, 116 A. L. R. 320. It is, of course, the rule that the character of an instrument is not determined by the name given it, nor even by the definitions contained therein, but by the general legal effect of its terms. To use the homely phrase, "calling a calf's tail a leg will not make it one," and unless the instrument has the legal effect of passing the title to the property to the county, it is not a conveyance in the legal meaning of the term, no matter what it may be called. It states on its face that it does convey the title. If this be its legal effect, should the county decide to discontinue the use of the machines, the only remedy of the company would be to sue for the unpaid purchase price, for the supervisors may not give away county property. But, admittedly, by the decisions of this court there is, and can be, no legal obligation upon the county to pay such purchase price. *Automatic Voting Mach. Corp.* v. *Maricopa County, supra; American-La France etc. Corp.* v. *Phoenix,* 47 Ariz. 133, 54 Pac. (2d) 258; *Bank of Lowell* v. *Cox,* 35 Ariz. 403, 279 Pac. 257. Indeed, since this is true, it is doubtful whether the supervisors would have the right to make any payments after an absolute conveyance, even if they so desired, for counties may only pay legal, and not moral, debts, and an obligation which is forbidden by law, no matter how much it may be morally due, can never be legally binding. We think the conditions in regard to future payments, and a possible return of the machines, show clearly that it was not contemplated by either party that title, in the usual meaning of the term, should pass to the county.

█ █ It is suggested by the company that it is a contract of sale or return, such as is described in *Commercial Securities Corp. Consol.* v. *Babbitt Mo-*

*tor Co.,* 36 Ariz. 438, 286 Pac. 820. If it be a contract of this nature, then in case a return of the property is made, as required by the contract, the county would be entitled to recover back the money already paid on the purchase price. *Thornton* v. *Wynn,* 12 Wheat. 183, 6 L. Ed. 595. But the contract expressly provides that the money paid by the county shall be considered as compensation for the use of the machines, and at the same time is, under certain circumstances, to be applied on the purchase price. The only reconciliation of these contradictory provisions is that it is not a contract of sale or return, but a conditional sales contract in which the money paid is to be considered as liquidated damages, on a failure to complete the contract, or else a mere option of purchase. We are satisfied that it is not, within the legal meaning of the term, a contract of sale or return.

It is not a conditional sales contract for it is carefully insisted therein that there is no legal obligation on the part of the county to pay anything. *Automatic Voting Mach. Corp.* v. *Maricopa County, supra.* We think it can only be construed legally as an option to the county to rent the machines year by year, if it so desires, with the proviso that if, and when, the rental paid amounts to a certain sum, title will then vest in the county. In other words, the contract, though differing greatly in language, is identical in legal effect with that construed by this court in *Automatic Voting Mach. Corp.* v. *Maricopa County, supra.* Such being the case, the supervisors have the same authority to enter into it as they did the contract in the case above referred to, and its effect would be the same as that contract, the title remaining in the company until such time as the rental value of the machines, which the county has the option to use from year to year, amounts to the full purchase price set forth in the agreement. The learned trial court very correctly

held, since a contract of this nature was within the power of the supervisors to make, that judgment should be rendered in favor of the defendants.

The judgment of the trial court is affirmed.

McALISTER, C. J., and ROSS, J., concur.