Robert ALLEN and Helen Allen, Appellants,

v.

Ronald S. COHEN, Trustee in Bankruptcy of Melvin F. Cady, Appellee.

No. 10, Docket 27455.

United States Court of Appeals
Second Circuit.

Argued Oct. 1, 1962.

Decided Nov. 14, 1962.

George E. Burns, Buffalo, N. Y., for appellants Robert Allen and Helen Allen.

Sanford Silverberg, Buffalo, N. Y., for Ronald S. Cohen, trustee.

Before LUMBARD, Chief Judge, and FRIENDLY and KAUFMAN, Circuit Judges.

FRIENDLY, Circuit Judge.

The Allens, appellants herein, operate a trailer court in the town of Boston, New York. Cady signed an agreement with them with respect to an "Elcona" trailer, in which he and his family thereafter lived in the court. After Cady became bankrupt, his trustee sought authority to sell the trailer free of any claims by the Allens. The trustee contended that the agreement constituted a conditional sale within § 61 of the New York Personal Property Law, McKinney's Consol.Laws, c. 41 and that since it was not filed as § 65 of that Law requires, the Allens' reservation of property was void as against an attaching creditor, as therein provided, and hence, by virtue of § 70, sub. c. of the Bankruptcy Act, as against the trustee. The Referee upheld this contention, and was in turn upheld by the District Court for the Western District of New York. We take a different view.

Section 61 of the New York Personal Property Law provides:

"'Conditional sale' means (1) any contract for the sale of goods under which possession is delivered to the buyer and the property in the goods is to vest in the buyer at a subsequent time upon the payment of part or all of the price, or upon the performance of any other condition or the happening of any contingency; or (2) any contract for the bailment or leasing of goods by which the bailee or lessee contracts to pay as compensation a sum substantially equivalent to the value of the goods, and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming the owner of such goods upon full compliance with the terms of the contract."

The agreement here at issue was drawn up by the Allens on the standard lease form of the Buffalo Real Estate Board. It contains provisions usual in leases, although the language is not altogether consistent, the word "rent" being crossed out at one place and "payment" inserted, and Cady being designated as "purchaser" in one provision typed into the agreement though as "tenant" in others. The lease was for "the term of 24 Months (Only) to commence on the 21st day of November 1959, and to end on the 21st day of November, 1961, at eight o'clock in the forenoon." The rental or "payment" was to be $32.00 weekly. The instrument stated the demised premises to be: "House Trailer—Model 1959–2 bedroom Serial No. 608 Make Elcona 50/10 ft.", and then continued:

| | |
|---|---|
| "Cash Price plus overall charges, such as rent, finance, insurence and etc.......... | $5800.00 |
| Payment for option priviledges shall be ... | $ 250.00 |
| The downpayment of said trailer shall be ... | $1934.00 |
| The weekly payment shall be ............. | $ 32.00 |
| Applied toward the downpayment per week shall be ............. | $ 17.00 |
| Held as overall charges per week, such as lot rent finance insurence . | $ 15.00" |

Another typed-in clause, under the heading "Option Agreement", said nothing about an option but provided that "The tenant must provide the owner of said trailer with 4 weeks notice of his inten-

tion to vacate same and all keys to the trailer must be turned into the office of The Allen Trailer Park and there will be no refund of money of any discription." Appended to the lease and cross-referenced to it was a paper entitled "Option Agreement Between The Allen Trailer Home Sales and Purchaser." This conferred on Cady an option to purchase the trailer "by adding enough to the initial deposit to make up the down payment (or to pay the trailer off in full) and in addition by satisfying the bank agreed upon by the parties hereto, that his credit standing is good enough that the said bank will finance the trailer and in addition by signing the conditional sales contract as offered by the bank."

Until August 1960 Cady made the weekly payments of $32; he had been previously credited with the $250 for "option priviledges". In addition the Allens collected 32¢ a week for Erie County sales tax, with which, they say, Cady was to be credited if he exercised his option. They have now returned this.

■ The sole question is whether the agreement comes within the definition of conditional sale in § 61 of N.Y.Personal Property Law, quoted above, which is a verbatim enactment of § 1 of the Uniform Conditional Sales Act. Since the agreement calls itself a lease, the first inquiry is whether it meets the test as to leases laid down by § 61(2). On its face it does not. Section 61(2) requires that the lessee contract "to pay as compensation a sum substantially equivalent to the value of the goods".[1] Admittedly the "value of the goods" was $5800. The Allens say that Cady contracted to pay only $378, viz., the $250 for "option priviledges" and the $32 for four weeks that would be required once he gave notice of intention to vacate. If we were to think otherwise and read the lease as obligating Cady to pay the rent for the balance of the term less any avails obtained by the Allens after repossession, this obligation was at most for "the term of 24 Months (Only) * * *," and the maximum payments to which Cady was committed on any view would thus be some $3578. Even though this entire sum were deemed "compensation" for the leasing of the trailer,[2] it would be only 62% of "the value of the goods." This was surely not "a sum substantially equivalent" to $5800, and the referee's unexplained finding to the contrary was clearly erroneous.

■ It has been uniformly held elsewhere, in accordance with the plain language of the statute, that a lease with an option to purchase is not within the Uniform Conditional Sales Act where, as here, the aggregate payments required of the lessee are not substantially equivalent to the purchase price. Automatic Voting Machine Corp. v. Maricopa County, 50 Ariz. 211, 70 P.2d 447, 116 A.L.R. 320 (1937); Oberan v. Western Machinery Co., 65 Ariz., 103, 174 P.2d 745 (1946); Western Material Co. v. Deltener, 64 S.D. 62, 264 N.W. 207 (1935). See also Breece Veneer & Panel Co. v. C. I. R., 232 F.2d 319 (7

1. The Commissioners tell us why this category was included, and what it was meant to encompass, 2 U.L.A., p. 3:

"It is well known that some sellers attempt to evade the conditional sale recording acts by calling the contract a 'lease' or 'hiring agreement' and providing for the payment of 'rent'. Wherever these 'leases' are substantially equivalent to conditional sales, they should be subject to the same restrictions. This equivalency seems to exist when the buyer is bound to pay rent substantially equal to the value of the goods and has the option of becoming or is to become the owner of the goods after all the rent is paid. In such a contract 'rent' means the purchase price, and possession as 'lessee' means the possession of a buyer under an executory contract of sale. That the buyer, in some cases, has the option of becoming the owner and thus a sale is not sure to take place, is of but small importance, for, as a practical matter, the buyer will always be willing to accept ownership when he has paid the value * * *"

2. Only $2018 of the $3578 would have been applicable "toward the downpayment", the balance being "overall charges * * * such as lot rent finance insurence."

Cir., 1956). Similarly, a bankruptcy court applying New York law has held an agreement with a purchase option to fall outside § 61 for the reason that the total required payments "would be about 53% below the List Price", so that the case was unlike those "in which it was demonstrated that an agreement called a lease was actually a conditional sales contract, for the reason that the total of all so-called rental payments equalled the selling price * * *" In re Tompkins Bus Corp., 22 F.Supp. 322, 324 (E.D.N.Y.1938). The leading New York case under § 61, New York World-Telegram Corp. v. McGoldrick, 298 N.Y. 11, 21, 23, 80 N.E.2d 61, 65, 66 (1948), concerned an agreement where, as the majority found, "the tenant became obligated to pay for the entire cost of the personal property within ten years and well within the first term of the lease". In holding that this came within the statute, Judge Thacher relied on the fact that "before the termination of the lease * * * the entire option price * * * would have necessarily been paid, and the lessee, within the definition of a conditional sale, would have had the option to become the owner without further payments." Accord, United States v. Voges, 125 F.Supp. 916 (E.D.N.Y.1959). And Judge Fuld's dissent stated that "a lease of personalty containing an option to purchase is not treated as a conditional sale if the price largely exceeds the aggregate rentals payable thereunder," and took issue only with the majority's factual conclusion that the lessee was actually obliged to make payments large enough to pay the entire purchase price during the term of the lease. 298 N.Y. at 25–26, 80 N.E.2d at 67–68.

The Referee cited and relied on American Can Co. v. United States Canning Corp., 12 Misc.2d 750, 170 N.Y.S.2d 727 (1958), which held § 61(2) to comprehend a lease renewable annually by the Lessee, with a purchase option whereby past rentals would be credited against the purchase price, although the rentals would not be "substantially equivalent to the value of the goods" unless the lessee twice exercised its right of renewal.[3] But that decision was reversed by the Appellate Term on grounds that made it unnecessary for the reviewing court to consider the correctness of this holding. 15 Misc.2d 549, 180 N.Y.S.2d 983 (1958), aff'd without opinion, 9 A.D.2d 746, 193 N.Y.S.2d 986 (1959). Federal courts have not been reduced to such stultification in applying state law that, in determining how New York would construe one of the Uniform Acts, they must shut their eyes to the language of the statute, its construction by appellate courts of other states, and relevant statements by the New York Court of Appeals, and adopt a contrary interpretation because of such a decision by a Municipal Court judge. See West v. American Tel. & Tel. Co., 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940); King v. Order of United Commercial Travelers, 333 U.S. 153, 161, 68 S.Ct. 488, 92 L.Ed. 608 (1948); Bernhardt v. Polygraphic Co. of America, 350 U.S. 198, 204–205, at 209, 76 S.Ct. 273, 277, at 279, 100 L.Ed. 199 (Mr. Justice Frankfurter concurring) (1956).

■ It would be surprising if the agreement between Cady and the Allens, although not falling within the second category of § 61, which was specifically designed to deal with contracts "for the bailments or leasing of goods," as this purported to be, nevertheless came within the first category as a "contract for the sale of goods." It does not. The first subdivision of the section applies only if "the property in the goods is to vest in the buyer at a subsequent time upon the payment of part or all of the price, or upon the performance of any other condition or the happening of any contingency." When the statute says "is to vest," it means a vesting which the

3. The Municipal Court erroneously relied, as also did the Referee here, on United States v. Voges, 125 F.Supp. 916 (E.D.N. Y.1954), which proceeded on the ground that there the purchase price under the option precisely equalled the rental payments which the lessee was obligated to make in any event.

contract requires both seller and buyer to accomplish, not one which the buyer has an option to demand if he does something he is not obliged to do. As said in 2 Williston, Sales (rev. ed. 1948), at p. 299:

> "It is however essential in order to make a conditional sale in the sense in which that term is used ordinarily in statutes or elsewhere, that the buyer should be bound to take title to the goods, or at least to pay the price for them."

New York World-Telegram Corp. v. McGoldrick, supra, states it to be requisite to a conditional sale that the vendee of the chattel be "obligated to pay for it." Indeed, the statute itself, N.Y.Personal Property Law, § 63, provides "the buyer shall be liable to the seller for the purchase price * * *." Here, so far as the agreement shows, Cady had an option, but not an obligation, to obtain "the property in the goods," either through paying the full price or, once he had been credited with $1934 against the downpayment, by getting a bank to finance the balance; in the latter event, "the property in the goods" would vest, not in Cady, but in the bank, which would then execute a "conditional sales contract" with him.

■■■■ Despite all this the Referee thought the agreement, which he characterized as "an unorthodox instrument at its best, very confusing, inconsistent and ambiguous," exhibited, when "read in the light of the credible testimony of Cady, and stripped of its freakness," "the elemental skeleton of a conditional sale."

Although the instrument would not win a prize for elegance in draftsmanship, we find no ambiguity that is critical with respect to the application of § 61 of the New York Personal Property Law. The agreement would come within § 61(1) only if there was a commitment to purchase, and within § 61(2) only if the lease was to continue until the compensation paid substantially equalled the value of the goods. However the instrument be read, it did not contain either of these essentials. With the agreement thus clear that Cady had no commitment to purchase and that the term of the lease was only for two years, and without any sufficient claim of mistake, the parol evidence rule, adequately invoked by the Allens, forbade the consideration of testimony that would alter the contract in either respect. Evans v. Edelstein, 276 Pa. 516, 120 A. 473 (1923); 9 Wigmore, Evidence (3d ed. 1940), § 2444. Compare Chapin v. Dobson, 78 N.Y. 74 (1879). Moreover, in none of the testimony given by Cady—who, to say the least, found himself utterly swamped in the legal seas into which his bankruptcy had plunged him—did he unequivocally assert that he considered himself responsible for the full price in the crucial sense of subjecting himself to personal liability for the entire unpaid balance even if he abandoned the trailer—an old-fashioned concept, no doubt, and one that Cady seemed quite unable to understand.[4] Nor was there any such finding by the Referee.

It would be hard to find a worse case than this for straining to push the statu-

---

4. When asked on direct examination "Was it your understanding that you had entered into a contract to purchase this trailer,", Cady answered, "That is right. With that kind of money why I would have to." When counsel for the Allens inquired whether what he meant wasn't that he had "hopes of eventually exercising an option and paying for it and getting title," Cady responded, "I will have to say no to that because I am not where a man can throw money away and just say well I am going in here for an adventure. This thing was to be a permanent thing and I was going to make it so." Again, when asked whether it was his understanding when he signed this contract "that you were merely leasing this trailer with an option eventually to purchase it?", he answered "No, I was buying it, I had signed a contract." However, the question asked by counsel for the Allens, "Now did you know as a matter of fact when you signed that contract that you could not be—if it became impossible for you to make payments that you could not be legally compelled to pay the entire amount of $5800?", was never answered, Cady saying, "I didn't hear that one, don't understand it." We share Cady's difficulty in understanding why he would want to "be legally compelled to pay the entire amount of $5800" as against having an

tory definition of "conditional sale" beyond its terms. Living in a trailer in a "trailer court" is a long way from creating the appearance of ownership that exists in the possession of an automobile registered in the buyer's name, or of a refrigerator in a home, or of a business machine in an office or factory. The Allens also rented trailers without purchase options, and had initially rented one to Cady on that basis. So far as Cady's creditors were concerned, there would be no more appearance of Cady's ownership from his possession of a trailer in the Allens' camp under the agreement here in question than from his possession under an agreement for rental and nothing more. True, the unlikelihood of deception in these circumstances would not save the transaction if it came within § 61 of N.Y.Personal Property Law. But the trailer's peculiar location and relative immobility help to explain why the Allens, unlike someone dealing in automobiles or other movable personalty, of which the "buyer" has a less restricted possession, could afford to use a contract that was neither an out-and-out conditional sale, under which the buyer obligated himself to pay the purchase price as such, or a lease-option agreement pursuant to which the rental payments substantially equalled the price. Since the Allens' contract did not fall within either of the statutory criteria, there was no basis for depriving them of their property and giving Cady's general creditors an unanticipated and undeserved windfall.

The order is reversed.

---

option to purchase, with a commitment limited very likely to four weeks after giving notice and at most to two years from the date of the lease. A year before giving the testimony here recited, but after a previous hearing when, apparently, he had said something similar, Cady signed an affidavit in the office of the Allens' attorney, stating: "Deponent states flatly and without any contradiction that this [the contract as written] was the agreement between the parties and there was never any intention to make a sale under conditional sales or chattel mortgage in the first instance." At the later hearing, Cady disclaimed this "because as I said I don't understand these words and I don't want to put myself in the middle." Allen testified that he knew "from past experience" that he was not "selling the trailer to him [Cady] pursuant to a conditional sales contract." To rely on testimony like Cady's to contradict the terms of an agreement would be to rest on quicksand; the case well illustrates the policy behind the parol evidence rule.